**Affirmed and Opinion filed February 25, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00869-CV

## IN THE INTEREST OF E.A.F., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2012-02536J**

# O P I N I O N

Appellant, E.F., appeals from the decree terminating his parental rights to the child, E.A.F., raising three issues. In his first issue, appellant asserts that the trial court should have warned him of the dangers of self-representation. In his second issue, appellant asserts the evidence is insufficient to support the finding that termination of his parental rights is in the child's best interest. Appellant asks in his third issue that we review the trial court's conservatorship determination if we conclude the termination finding must be reversed. We affirm.

# BACKGROUND

The Texas Department of Family and Protective Services (the Department) filed suit on April 16, 2012, seeking protection of the child, E.A.F. The record reflects that appellant, who was not married to the child's mother and did not live with her, discovered his then one-year-old daughter home alone while the mother was at work. Upon arriving at the mother's apartment, he heard the child crying and broke down the door. Appellant notified the Department and the police, and he left the scene with the child.

The evidence in the record reflects that the Department's investigation of the father's background revealed that appellant's parental rights to another child had been terminated in Bell County after the child was severely injured. That child's mother was later convicted for injuring the child. Appellant also has a conviction for assault of a military police officer at Fort Hood. Based on this history, the Department was appointed temporary managing conservator of E.A.F., and the child was placed in the home of her paternal aunt (appellant's sister), where appellant also resided.

There is evidence in the record of an incident in which appellant threatened his sister in whose care the child was placed, and the police were summoned. Appellant's visits with the child at the aunt's home were suspended. In January of 2013, the Department recommended appellant have visitation with the child at the CPS office, but the record reflects appellant only had one visit at the office. The Department's case worker testified that appellant arrived 45 minutes late for his scheduled visit with the child and became upset, hostile, and confrontational when he was told the visit could not be extended. After problems arose with the aunt being unavailable for home visits by the ad litem, the child was placed in a foster home.

On April 11, 2013 the case was called to trial. Prior to calling its first witness, counsel for the Department asked appellant's court-appointed counsel, Pat Shelton, if he still represented appellant. Shelton responded, "my client has released me." Shelton explained that he was ready to proceed with trial and stated "It seems like there would be a full trial for the father that's required." He requested some clarification from the trial court before the trial started, however. Specifically, the following colloquy occurred:

> Mr. Shelton: But I need to know whether — I'd be happy to be here but — it's got the Court that assigned me. I got my client, who on the telephone has released me. I'm kind of in a little limbo right now.
>
> The Court: What do you want to do?
>
> Mr. Shelton: I'm ready to proceed.
>
> The Court: Okay.
>
> Mr. Shelton: I think he has a legitimate case.
>
> The Court: Okay. So you don't want a lawyer?
>
> [Appellant]: I want to represent myself.
>
> The Court: Okay. Well you can do that. All right. You're released.
>
> Mr. Shelton: Thank you.
>
> The Court: All right. I guess we're ready.

The record does not reflect that Shelton filed a motion to withdraw as counsel or that the trial court signed an order granting withdrawal.

The Department then called its first witness, and appellant represented himself at trial. The trial court signed an interlocutory decree terminating appellant's parental rights on June 18, 2013, and continued the trial concerning the mother until August 15, 2013.[1] On September 10, 2013, the trial court signed a

---

[1] Appellant filed a *pro se* notice of appeal on July 3, 2013, from the interlocutory termination order. After notice to the parties, this court dismissed the attempted appeal. *See In re E.A.F.,* No. 14-13-00618-CV, 2013 WL 4945751 (Tex. App.—Houston [14th Dist.] Sept. 12, 2013, no pet.) (mem. op.).

final decree terminating the mother's parental rights, making the interlocutory order signed June 18, 2013, final. Appellant's counsel then filed a timely notice of appeal from the final termination decree.[2]

## TERMINATION OF PARENTAL RIGHTS

The involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). But while parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## *FARETTA* WARNINGS

Appellant argues in his first issue that the trial court's judgment terminating his parental rights should be reversed because he was allowed to represent himself

---

[2] The mother is not a party to this appeal.

without being provided warnings about the dangers of self-representation. Appellant asks that we apply the due process protections announced in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525 (1975), a criminal case, to a parent facing the involuntary termination of his parental rights.

In *Faretta,* the United States Supreme Court recognized that a criminal defendant has the right to the assistance of counsel under the Sixth Amendment, as well as the right to waive counsel and represent himself. *Id.* at 807, 95 S.Ct. at 2527. However, once the defendant asserts his right to self-representation, a trial court judge must ascertain that he chooses to waive the right to counsel knowingly and intelligently, and must warn the defendant of the dangers and disadvantages accompanying such a waiver. *Id.* at 835–36, 95 S.Ct. at 2541.

In arguing for an extension of the requirement for *Faretta* warnings to this civil termination proceeding, appellant has analogized this case to a criminal case. Appellant notes that because of the importance of a parent's interest in his parental rights, courts have sometimes found guidance from criminal cases in termination proceedings. *See, e.g., In re M.S.,* 115 S.W.3d 435, 544-45 (Tex. 2003) (holding that the statutory right to counsel in government termination proceedings "embodies the right to effective counsel" and applying the standard for determining ineffective assistance used in criminal cases).

The United States Supreme Court has recognized that, in contrast to criminal cases, there is no constitutional right to appointed counsel in all termination proceedings. *See Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 27–32, 101 S.Ct. 2153, 2159–62 (1981). The Court held that appointed counsel was not routinely required to assure a fair adjudication; instead, a case-by-case determination of the need for counsel would suffice. 452 U.S. at 32, 101 S.Ct. at 2162.

Texas has adopted a statutory scheme for providing counsel to assist

indigent parents, mandating the appointment of an attorney ad litem for an indigent parent who opposes the termination of the parent-child relationship in a suit filed by a governmental entity. Tex. Fam. Code § 107.013(a)(1). Specifically, the Family Code provides that the trial court "*shall* appoint an attorney ad litem to represent the interests of: (1) an indigent parent of the child who responds in opposition to the termination . . . ." Tex. Fam. Code Ann. § 107.013(a)(1) (emphasis supplied). The appointment of an attorney ad litem is required whether or not the indigent parent requests an attorney. *See In re J.M*., 361 S.W.3d 734, 739 (Tex. App.—Amarillo 2012, no pet.) (holding the trial court committed reversible error by proceeding without appointing an attorney ad litem, even though appellant did not request an attorney).

The Texas Family Code defines an "attorney ad litem" as "an attorney who provides legal services to a person, including a child, and who owes to the person the duties of undivided loyalty, confidentiality, and competent representation." Tex. Fam. Code § 107.001(2). The Family Code sets out the powers and duties of an attorney ad litem appointed to represent the interests of a parent in a termination proceeding brought by a government entity. *See* Tex. Fam. Code § 107.0131. Among these duties, an ad litem is required to "ensure competent representation at hearings, mediations, pretrial matters, and the trial on the merits" and to "attend all legal proceedings in the suit." *Id.* at (a)(1) (C), (G). An attorney ad litem appointed for a parent under Chapter 107 who fails to perform the duties required by Section 107.0131 is subject to disciplinary action. *See* Tex. Fam. Code § 107.0133.

The Family Code provides that the attorney ad litem's duties continue until the termination proceedings are dismissed or finally concluded unless the attorney is relieved or replaced "after a finding of good cause is rendered by the court on the record." Tex. Fam. Code § 107.016(2). Section 107.016(2) provides:

(2) an attorney appointed under this subchapter to serve as an attorney ad litem for a parent or an alleged father continues to serve in that capacity until the earliest of:

(A) the date the suit affecting the parent-child relationship is dismissed;

(B) the date all appeals in relation to any final order terminating parental rights are exhausted or waived; or

(C) the date the attorney is relieved of the attorney's duties or replaced by another attorney after a finding of good cause is rendered by the court on the record.

Tex. Fam. Code § 107.016(2).

In considering appellant's argument that we adopt a requirement for *Faretta* warnings in this case, we first note that the Sixth Amendment, on which *Faretta* is based, provides for the right to assistance of counsel in "all criminal prosecutions," and it does not apply in parental termination proceedings. *See* U.S. Const. amend VI. The Eighth Court of Appeals has rejected a terminated father's complaint that he was not allowed to represent himself. *See In re A.H.L., III,* 214 S.W.3d 45, 52 (Tex. App.—El Paso 2006, pet. denied) (finding due process does not require the right of self-representation in a termination of parental rights case). The El Paso Court upheld the trial court, which construed the mandatory nature of section 107.013 as prohibiting the father from proceeding without an appointed attorney ad litem. *Id.* at 51–52 (citing Tex. Fam. Code Ann. § 107.013(a)(1)).

Appellant asks that we instead follow the Court of Appeals for the First District, which held that *Faretta* warnings were required in a case concerning self-representation in a private termination proceeding. *See In re C.L.S.*, 403 S.W. 3d 15, 21 (Tex. App.—Houston [1st Dist.] 2012, pet. filed). Because *C.L.S.* concerned a private termination proceeding, the mandatory appointment of an ad litem attorney was not at issue. *See* Tex. Fam. Code Ann. § 107.013(a)(1) (stating ad litem appointment is required in suits filed by a governmental entity in which an

indigent parent opposes termination). The father in *C.L.S.* was not precluded from dismissing his counsel because an appointed ad litem was not mandated. Therefore, the holding in *C.L.S.* that *Faretta* warnings should have been provided is not applicable in this case.

In this case, the trial court signed an order appointing Pat Shelton "to serve as attorney ad litem and to represent the interests of [appellant]" in the termination proceedings, as is mandated by statute.[3] *See* Tex. Fam. Code Ann. § 107.013(a)(1) (stating attorney ad litem appointment is required in suits filed by a governmental entity in which an indigent parent opposes termination); *see also In re C.D.S.*, 172 S.W.3d 179, 186 (Tex. App.—Fort Worth 2005, no pet.) (holding the trial court was required to appoint an attorney ad litem to represent indigent parent in government-initiated termination proceeding, and the failure to do so constituted reversible error). Here, there was no finding of good cause rendered by the court on the record and the court did not relieve the attorney of his duties pursuant to Texas Family Code Section 107.016. Moreover, here, the Code did not authorize appellant to release the ad litem. Accordingly, the ad litem was not properly relieved of his duties.

In sum, the Texas Family Code provides that the trial court has a mandatory statutory duty to appoint an attorney ad litem for an indigent parent in an involuntary termination proceeding brought by a government agency. The plain language of the Code deprives the trial court of the authority to permit the withdrawal of such attorney ad litem absent a finding of good cause — a finding

---

[3] The record reflects that appellant was initially represented by retained counsel. On October 2, 2012, the trial court granted retained counsel's motion for leave to withdraw and signed an order appointing Shelton. While our record does not contain an affidavit of indigence, the Department has not disputed that appellant was determined to be indigent, as alleged in appellant's brief. *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). We also note that appellant is represented by appointed counsel on appeal.

neither made nor requested in this case. As such, the court-appointed attorney ad litem's duties to appellant should have continued. Stated differently, section 107.016 did not allow appellant to release a court-appointed attorney ad litem, so he cannot show he was entitled to *Faretta* warnings regarding the consequences of such a release.

Appellant has not complained that the trial court erred in permitting the attorney ad litem to withdraw. Nor has he complained that the trial court should have appointed a new ad litem attorney. Instead, he asked in his brief, "Did the trial court err by failing to warn appellant of the disadvantages and dangers of waiving his right to counsel and the assistance of counsel as required by *Faretta v. California*[?]" For the reasons given above, we conclude that *Faretta* warnings are not implicated in this case.

Because appellant has not complained in his brief that the trial court erred in permitting the court- appointed attorney ad litem to withdraw, we may not reverse the trial court's judgment on that basis. The Supreme Court of Texas has repeatedly instructed that "the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error*." Brown v. Traylor*, 210 S.W.3d 648, 657 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)). Under Rule 38.1 of the Texas Rules of Appellate Procedure, an appellant must assign error in his brief to complain of that error. *See* Tex. R. App. P. 38.1(f) ("The brief must state concisely all issues or points presented for review.").[4] We are to address only those issues that have been

---

[4] Issues are construed to include "every subsidiary question that is fairly included." Tex. R. App. P. 38.1(f); *see, e.g, Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 284 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (finding issue challenging exclusion of expert testimony included argument about the reliability of an expert's foundational data). We construe a complaint that counsel was improperly dismissed in violation of a statutory requirement for an ad litem attorney (which appellant has not made) to be a separate and distinct error from the denial of warnings about self-representation.

raised and are necessary to a final disposition of the appeal. *See* Tex. R. App. P. 47.1. "It is not the proper function of this Court to create arguments for an appellant. We are restricted to addressing the arguments actually raised, not those that might have been raised." *Feagins v. Tyler Lincoln-Mercury, Inc.*, 277 S.W.3d 450, 455 (Tex. App.—Texarkana 2009, no pet.) (quoting *Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*, 792 S.W.2d 128, 134 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). We are thus prohibited from altering even an erroneous judgment in a civil case without a challenge to the error on appeal. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 303 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We therefore overrule appellant's first issue.

## BEST INTEREST

In his second issue, appellant challenges the sufficiency of the evidence supporting the trial court's finding that termination of appellant's parental rights is in the child's best interest. There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Appellant concedes in his brief that the evidence is legally and factually sufficient to support the trial court's termination finding under subsection

10

(M), based on the prior termination for endangering conduct. Only one predicate finding is required. Therefore, appellant did not challenge the sufficiency of the evidence supporting the other statutory predicate finding supporting termination, subsection (O). *See* Tex. Fam. Code § 161.001(1)(M), (O).

The unchallenged predicate findings are binding. *See In re K.L.G.*, No. 14-09-00403-CV, 2009 WL 3295018 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (because the predicate and best interest findings were not challenged, they were binding on the appellate court); *see also IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997). These unchallenged predicate findings can therefore support the best interest finding. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding that same evidence may be probative of both section 161.001(1) predicate grounds and best interest); *see also In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding.").

The following factors, among others, should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. Tex. Fam. Code § 263.307(b); *R.R.,* 209 S.W.3d at 116.

In addition, courts may consider other nonexclusive factors in reviewing the

sufficiency of the evidence to support the best interest finding, a court examines several factors, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

When determining legal sufficiency, we review "all the evidence in the light most favorable to the court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, this does not mean that we must disregard all evidence that does not support the finding. *Id.* Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.* With these considerations in mind, we review the evidence below.

One of the statutory best-interest factors courts are to consider is whether there is a history of abusive or assaultive conduct by the child's family. *See* Tex.

Fam. Code § 263.307(b)(7). A reviewing court may examine a parent's history with other children in considering the risks or threats of a parent's environment. *In re E.C.R.*, 402 S.W.3d at 248. "Part of [the] calculus includes the harm suffered or the danger faced by other children under the parent's care." *Id.* Courts are to consider whether a parent demonstrates adequate parenting skills, including providing the child with "protection from repeated exposure to violence even though the violence may not be directed at the child." Tex. Fam. Code § 263.307(b)(12)(E).

Appellant's parental rights to his first child were terminated on findings that he endangered that child. The Department's case worker acknowledged that appellant claimed he was not the father of that child, he was not charged with harming the child, and he had nothing more to do with the mother after she was convicted and jailed for injuring the child. The record also reflects that despite this prior termination, the Department initially recommended that appellant should be named a possessory conservator with limited visitation and the requirement to pay child support.

There was also evidence that appellant engaged in domestic violence. The Department provided evidence that appellant had been incarcerated for domestic violence and for an assault on a military police officer who responded to the complaint that appellant strangled his former wife. A "parent's past behavior is indicative of the quality of future care that the parent is capable of providing." *In re C.J.*, No. 14-07-00838-CV, 2008 WL 447687 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (mem. op.). In addition, the record contains evidence that appellant threatened physical violence to his sister who was caring for E.A.F. The Department's case worker also testified that appellant was not cooperative and became upset, hostile, and confrontational when he was denied additional

visitation time after arriving late. The child advocate expressed her opinion that appellant was dangerous. The record reflects that she no longer worked on the case because she felt threatened.

Appellant called witnesses who testified favorably on his behalf. The child's godfather, who had known appellant since childhood, stated he never saw any violent behavior and it seemed that appellant was a caring father. Appellant also called his sister, who had cared for the child for over a year. She denied filing a police report on appellant, and stated the complaint was made by her apartment manager. She claimed she was not afraid of appellant and had no concern that he would harm her.

It was also appropriate for the court to consider that appellant did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.,* 402 S.W.3d at p. 249 (findings under section 161.001(1)(O) can support best interest finding); *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, *17 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (considering failure to participate in services required for reunification in best-interest determination). Appellant performed some of the court-ordered services, but the record reflects that he failed to establish that he satisfied the requirements for maintaining stable housing and employment. The trial court's finding that appellant had failed to comply with the court-ordered steps necessary to reunify with his child and show he would be responsible for her needs, which is unchallenged, supports the court's best interest finding. *See In re J.T.G.,* 2012 WL 171012 at *17–*18 (finding parent's failure to demonstrate stable housing and employment supported a finding that parental termination was in the child's best interest).

There is very little information in the record about the child's current placement. The child advocate testified that the child was healthy and doing well in

her current placement in a foster home. The Department's case worker also confirmed the child's well-being. She informed the court that the child was two years old at time of trial. She was very healthy and in the process of potty training. The case worker confirmed the child was doing well in a foster home, but she acknowledged that it was not an adoptive home. The record reflects that a home study for possible placement with a paternal grandmother was being completed.

In sum, the record contains sufficient evidence to support the best interest finding based on appellant's criminal history, the prior termination, evidence of family violence, and failure to fully comply with the court-ordered service plan. After considering the relevant factors under the appropriate standards of review, we hold that the evidence presented at trial and summarized above is legally sufficient to reasonably establish a firm belief or conviction that termination of appellant's parental rights is in the child's best interest. *See* Tex. Fam. Code § 106.001(2); *Holley*, 544 S.W.2d at 371–72. We overrule appellant's second issue.

### CONSERVATORSHIP

In appellant's third issue, which he urges only in the event we sustain either of his first two issues, he asserts the trial court should have appointed him either as managing or possessory conservator of the child. Appellant conceded that if his challenge to the trial court's termination finding on best interest grounds is overruled, section 161.207(a) authorizes the appointment of the Department as the child's sole managing conservator. *See* Tex. Fam. Code § 161.207(a) (providing that the court shall appoint a suitable managing conservator "[i]f the court terminates the parent-child relationship with respect to both parents or to the only living parent").

Because we have overruled appellant's first two issues, determining that the trial court's decree terminating appellant's parental rights must be affirmed, we

need not address appellant's third issue.

## CONCLUSION

We order the decree terminating appellant's parental rights to E.A.F. affirmed.


/s/    John Donovan
          Justice


Panel consists of Justices McCally, Busby, and Donovan.