In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-15-00079-CV**
**IN THE INTEREST OF O.R.W.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-220,185**

**MEMORANDUM OPINION**

The trial court terminated appellant A.F.'s parental rights to O.R.W. In this accelerated appeal, appellant presents five issues challenging the legal and factual sufficiency of the evidence and the timeliness of the trial court's appointment of appellant's attorney. *See* Tex. Fam. Code Ann. § 263.405 (West 2014). We affirm the trial court's order of termination.

Background

The Texas Department of Protective and Regulatory Services (the "Department") first investigated appellant for allegations involving unsanitary living conditions when she resided with her father. At that time, appellant had one

1

daughter, A.C. Appellant testified that she cleaned the home and the case was closed. The Department subsequently became involved regarding allegations of sexual abuse committed by appellant's boyfriend, J.W., against A.C. The Department removed A.C. from the home and appellant later gave birth to O.R.W., who is J.W.'s daughter.

Case worker Susanne Jones testified that, after O.R.W.'s birth, she visited with appellant at appellant's father's home, which Jones described as smelling so strongly of animal urine that it was difficult to breathe. Jones observed dirty cat litter boxes, moldy holes in the ceiling, roaches in the home, rotten flooring, and general filth. Jones also learned that the roof had leaked since 2005. Jones testified that a child's exposure to urine odors poses health risks to the child and that, despite the Department's previous warnings, appellant still brought O.R.W. into that environment. Jones was also concerned because appellant struggled to breastfeed O.R.W., but had little formula in the home and no money or services in place to obtain formula. Appellant told Jones that she had no transportation to the WIC office. Jones testified that appellant later obtained a breast pump from WIC but no formula.

Jones expressed concern over appellant's continued relationship with J.W. and her failure to recognize the dangers of having a child with J.W. She testified

that appellant was told that having a sex offender in the home poses a danger to the child, but that J.W. still lived in the home both before and after O.R.W.'s birth. Appellant admitted continuing her relationship with J.W. after A.C. was removed from her care, but she claimed that she had seen no evidence proving that J.W. harmed A.C. Appellant testified that she no longer wanted a relationship with J.W. and had ended her relationship with J.W. about a year before trial. She admitted visiting J.W. in jail and sending him a letter in August 2014, in which she stated she wished J.W. could see O.R.W. and which she signed "Always and forever, your wife[.]"

Georgia Ann Williams, appellant's counselor, testified that appellant claimed that J.W. was bipolar and schizophrenic and sometimes hit walls or trees, but would never hit a child. Williams testified that appellant minimized the dangers posed by J.W.'s presence in the home and that even though A.C. had suffered from the same sexually transmitted diseases as did J.W., appellant did not believe J.W. had molested A.C. At trial, appellant claimed to no longer be communicating with J.W. and to have no plans of reconnecting with him. Appellant promised to keep O.R.W. away from J.W. for her protection.

Williams expressed concern regarding appellant's lack of stability and she noted that appellant lived in several places throughout the Department's

3

investigation. According to the record, in September 2014, appellant pleaded guilty to three counts of forgery. Appellant also admitted that between March 2014 and January 2015, she had lived with her father, her sister, and her mother. She applied for housing and, shortly before trial, she moved into an apartment with her grandmother, who was staying with appellant temporarily. Appellant testified that she has had a full-time job since November 2014 and had matured. Despite these changes, Williams testified that she would not recommend that O.R.W. be returned to appellant's care. Caseworker Kirsten Bernard testified that appellant's housing was not independent, the apartment was not the appropriate size for two adults and a child, and the housing could not be considered stable when appellant had lived there for only two weeks. Bernard also did not believe that appellant's employment had been consistent enough to demonstrate an ability to support O.R.W.

Bernard testified that the plan for O.R.W. is relative adoption by her paternal grandmother. Bernard testified that O.R.W. had lived with her grandmother since May 2014, is cared for, appears happy, is bonded with her grandmother, and is in a clean environment. She explained that O.R.W.'s grandmother had inquired about ways to protect O.R.W. from J.W., stopped visiting J.W. in jail, stated that J.W. was not welcome in her home, appeared to believe the allegations against J.W., and Bernard believed O.R.W.'s grandmother intended to protect O.R.W. from J.W.

4

Bernard believed that O.R.W.'s grandmother would allow appellant to see O.R.W., which would be healthy for O.R.W.

Appellant testified that she loves O.R.W. and wanted O.R.W. to be returned to her care. She testified that if she could not afford day care, her mother or a friend would babysit O.R.W. at appellant's apartment. Appellant acknowledged that should her rights be terminated, she would be able to continue seeing O.R.W. She agreed that having this option available was in O.R.W.'s best interest.

According to Williams, the changes appellant made resulted from the Department's involvement, rather than her own internal desire to change, and that once the Department's involvement ended, she believed appellant might return to her old behavior. Williams did not believe that appellant possessed the maternal instincts necessary to protect O.R.W. Jones testified that appellant had knowingly placed O.R.W. in conditions or surroundings which endangered O.R.W. and engaged in conduct and failed to engage in proper conduct which caused physical and emotional danger to O.R.W. Bernard believed that O.R.W. was better off with her grandmother than she would be with appellant. She opined that termination was in O.R.W.'s best interest.

The trial court found that appellant: (1) knowingly placed or knowingly allowed O.R.W. to remain in conditions or surroundings which endangered her

physical or emotional well-being; (2) engaged in conduct or knowingly placed O.R.W. with persons who engaged in conduct which endangered her physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of O.R.W. The trial court found termination to be in O.R.W.'s best interest.

## Legal and Factual Sufficiency

In issues one through four, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that (1) termination is proper under Texas Family Code section 161.001(1)(D), (E), (O); and (2) termination was in O.R.W.'s best interest. Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O), (2) (West 2014). Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

6

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also J.L.*, 163 S.W.3d at 84. A judgment will be affirmed if any one of the grounds is legally and factually sufficient and the best interest finding is also legally and factually

sufficient. *In the Interest of C.A.C.*, No. 09-10-00477-CV, 2011 Tex. App. LEXIS 3385, at *2 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Section 161.001(1)(D) allows for termination if the trial court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(1)(D). The "endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being." *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The trial court may consider parental conduct both before and after the child's birth. *Id.* Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child

relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West 2014).

A trial court may examine a parent's history with other children when considering the risks or threats of a parent's environment. *In the Interest of E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In this case, the trial court heard evidence that, before O.R.W. was born, appellant (1) exposed A.C. to an unsanitary home environment; and (2) remained in a relationship with a man who was accused of sexually abusing A.C. The record demonstrates that appellant resided in her father's home, along with A.C., even though the home was filthy and smelled of urine. Although appellant had been warned about exposing a child to unsanitary living conditions, she nevertheless exposed O.R.W. to such conditions. Even after O.R.W. was removed from her care, appellant still resided with her father. "Unsanitary conditions can qualify as surroundings that endanger a child." *In the Interest of C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.).

Additionally, "abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *In the Interest of J.T.G.*, 121 S.W.3d 117, 125

(Tex. App.—Fort Worth 2003, no pet.). The record indicates that appellant minimized the sexual abuse allegations against J.W. even though A.C. suffered from sexually transmitted diseases that J.W. also had. The trial court heard testimony that appellant claimed A.C. developed chlamydia by exposure to a chicken. The record also contains evidence suggesting that J.W. experiences episodes that cause him to strike trees and walls. Even after A.C. was removed from the home and the Department warned appellant of the dangers associated with J.W.'s presence in the home, appellant continued her relationship with J.W. The trial court was entitled to consider appellant's disregard of the dangers posed by her continued relationship with J.W. as evidence of endangerment. *See Jordan*, 325 S.W.3d at 721 ("[A] child is endangered when the environment creates a potential for danger which the parent is aware of but disregards."); *see also J.T.G.*, 121 S.W.3d at 125.

The trial court could also consider appellant's conduct subjecting O.R.W. to a life of uncertainty and instability. *See In the Interest of M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). The record demonstrates that appellant lived in several locations in the months before trial. She obtained housing only two weeks before trial, which Bernard testified is insufficient to show stable independent housing. The trial court also heard Bernard's testimony that

10

appellant's one-bedroom apartment, which she shared with her grandmother, was not suitable for two adults and a child. Nor did Bernard believe that appellant's employment history, consisting of irregular and short periods of employment, was sufficient to establish her ability to support O.R.W. financially. Evidence of a parent's improved conduct, especially of short duration, does not conclusively negate the probative value of a history of irresponsible choices. *In the Interest of J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Additionally, evidence that appellant had pleaded guilty to three forgery charges is relevant to whether she engaged in a course of conduct that endangered O.R.W.'s well-being. *See In the Interest of S.R.*, 452 S.W.3d 351, 360-61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

The trial court could reasonably conclude that appellant's conduct created an environment that endangers O.R.W.'s physical and emotional well-being and could infer from her past endangering conduct that similar conduct would recur if O.R.W. were returned to appellant. *See M.R.J.M.,* 280 S.W.3d at 502; *see also J.T.G.*, 121 S.W.3d at 125. The trial court could reasonably have formed a firm belief or conviction that appellant knowingly placed or knowingly allowed O.R.W. to remain in conditions or surroundings which endangered her physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D).

11

Regarding the trial court's best interest finding, the record indicates that O.R.W. was too young to express her desires, but Bernard testified to the bonded relationship and healthy environment that O.R.W. has with her grandmother. The Department planned for O.R.W.'s adoption by her grandmother and the record indicates that appellant would still be able to have a relationship with O.R.W. The trial court heard evidence that appellant's employment and living history and her decisions to expose her child to both unsanitary living conditions and an accused sex offender indicated an inability to meet O.R.W.'s emotional and physical needs and to protect her from certain dangers.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the witnesses' credibility and the weight to be given their testimony, the trial could reasonably conclude that appellant was unable to provide such an environment for O.R.W. The trial court could reasonably have formed a firm belief or conviction that termination of appellant's parental rights was in O.R.W.'s best interest. *See id.* §§ 161.001(2), 263.307(b); *see also J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. Accordingly, we conclude that the Department established, by clear and convincing evidence, that appellant committed the predicate act enumerated in section 161.001(1)(D) and that

12

termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001. We overrule issues one and four and need not address issues two and three regarding section 161.001(E) and (O). *See C.A.C.*, 2011 Tex. App. LEXIS 3385, at *2; *see also* Tex. R. App. P. 47.1.

Appointment of Counsel

In issue five, appellant maintains that the trial court untimely appointed an attorney under section 107.013 of the Texas Family Code. In a termination suit, "the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination or appointment[.]" Tex. Fam. Code Ann. § 107.013(a)(1) (West 2014).

The record does not indicate that appellant complained at trial that an attorney had been untimely appointed. *See* Tex. R. App. P. 33.1(a); *see also In the Interest of K.P.*, No. 09-13-00404-CV, 2014 Tex. App. LEXIS 9263, at *36 n.3 (Tex. App.—Beaumont Aug. 21, 2014, no pet.) (mem. op.). Even had appellant preserved her fifth issue, "the Legislature did not set forth any time frame or procedure by which trial courts must appoint counsel." *In the Interest of M.J.M.L.*, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied). "The timing of appointment of counsel to indigent parents appearing in opposition to termination

is a matter within the trial court's discretion." *K.P.*, 2014 Tex. App. LEXIS 9263, at *36 n.3.

Approximately two months before trial, the trial court appointed an attorney for appellant, and appellant's attorney told the trial court that she could represent appellant. The record indicates that appellant had not previously requested appointment of counsel or filed an affidavit of indigence, and, only after counsel was appointed did appellant file an original answer opposing the Department's petition. Counsel sought a continuance of the final hearing, arguing in part that appellant had "not been given adequate time to assist said attorney to prepare and represent her in the trial for termination of her parental rights schedule[d] for January 20, 2015." The trial court granted the motion and rescheduled the hearing for February 3, 2015. Under these circumstances, the record does not demonstrate that the trial court abused its discretion by failing to appoint counsel earlier in the case. *See id.*; *see also M.J.M.L.*, 31 S.W.3d at 354. We overrule issue five and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

14

Submitted on June 8, 2015
Opinion Delivered August 13, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.