

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-21-00059-CV
_____

IN THE INTEREST OF J.H, J.H., AND J.H., CHILDREN

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL211-19; Honorable Delwin McGee, Presiding

June 30, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Biological mother, April, appeals the trial court's judgment terminating her parental rights to Joseph, Justin, and Jasmine.[1]  On appeal, April challenges the evidence supporting the trial court's finding that termination of her parental rights was in the children's best interest.  We affirm.

---

[1] Due to the fact that the children have identical initials, we have used the pseudonyms the parties have used in their briefing to facilitate a clear discussion of the facts of this case while protecting the children's anonymity.  See TEX. R. APP. P. 9.8(b).  Though the parental rights of the father, "Clint," were also terminated, he did not appeal that judgment.

*Background*

The Department first became involved with the family in March 2019 based upon reports of medical neglect. The Department deemed the allegation "unable to determine," and referred the family to the Family Based Safety Service division. Some months later, in September 2019 and based on similar concerns, the Department again began to investigate allegations that the parents were medically and physically neglectful of the children and also allegations that drugs were being used in the home.

Again, we refer to the parents of the three subject children as April and Clint, as the parties have. The three children are referred to as Joseph, Justin, and Jasmine. At the time of the final hearing, the children were five, four, and two, respectively. Joseph suffers from cerebral palsy, conductive hearing loss, bilateral chronic serous media, microencephaly, hemiballismus, dystonia, dysarthria muscle weakness, speech delay, global development delay, sleep disturbance, chorea, and ataxia. Joseph requires the use of a wheelchair and a number of doctors' appointments to address his medical conditions. Justin has medical concerns with his vision. According to caseworker testimony, the failure to attend Justin's scheduled specialist appointments nearly resulted in him suffering severe damage, including potential vision loss. Ultimately, surgery was performed and corrected Justin's condition. It appears that Jasmine does not suffer from any chronic or serious medical conditions. The Department's investigation revealed that April and Clint failed to show or cancelled a number of critical medical appointments for the children to treat serious medical conditions from which the boys suffered.

Both parents agreed to drug screens, both of which yielded positive results for cocaine and marijuana. Drug screens on Jasmine, one year old at the time, returned

positive results for cocaine and marijuana. Ultimately, April admitted that she was using cocaine and marijuana during the time the children were removed from her care.

April completed some of the court-ordered services and failed to complete others. Notably, the record suggests she did not consistently attend AA/NA meetings as required. She testified to having attended some meetings, though those times were unclear and some unconfirmed. She also explained that she lost records of some attendance when she broke her phone. Her attendance, according to the caseworker, was critical to her being able to keep a drug-free lifestyle for herself and her children.

She availed herself of drug rehabilitation services, and her most recent drug screens have yielded negative results. She testified that she had remained free of drugs since November 2019. However, there is evidence that, following an evening of heavy drinking, she wrecked a loaned car and fled the scene. She admitted that she continued to drink alcohol throughout the case, having stopped drinking only about one month prior to the final hearing.

Early on in the case, April went three months without visiting the children though she now attends visitation. The children are currently living with their paternal grandparents who have made great efforts in getting the children caught up with their medical care and appear from the record to be providing the children with a stable and loving home in which the children are doing very well. Joseph attends extensive and regular physical, occupational, and speech therapy in their care. At the time of the final hearing, the grandparents were in the process of getting Joseph a motorized wheelchair to enable him to become more independent. They have modified their house to accommodate his mobility needs and their vehicles allow them to transport the

wheelchair.  Both grandparents, the children's paternal aunt, and a personal care provider all work together to get the children what they need.  The case manager testified that the grandparents not only meet but exceed the children's medical needs.  The children love their grandparents and share a strong bond with them.

In contrast, April has moved frequently and her residence at the time of trial lacked the modification that would allow Joseph to move about the house.  April also lacks transportation and relies on her sister for rides even though the sister's car cannot accommodate a wheelchair.  During the pendency of the case, April's continued sporadic attendance and participation in the children's medical care were also noted.  Her proof of employment was limited to one month of pay stubs and her statements that she was previously working at a bar and at a restaurant in Cactus.  She testified that her work plans include working the night shift to allow for her to attend medical appointments.

April's parental relationship with the three children was terminated.  The trial court found that several of the Texas Family Code's statutory grounds supported termination and that termination was in the children's best interest.  She appeals that termination now, challenging only the trial court's finding that termination of her parental rights is in the children's best interest.

*Analysis – Best Interest of the Child*

Parental rights may be involuntarily ended if a two-pronged test is met.  That is, clear and convincing evidence must establish both one or more of the statutory grounds permitting termination and termination must be in the child's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020); *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).  April does not dispute that clear and convincing evidence established the

first prong, conceding that sufficient evidence supports the trial court's findings under subsections (D), (E), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), and (O). Therefore, unchallenged predicate statutory grounds support the termination of April's parental rights. Said evidence also can support the trial court's best-interest finding. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet denied) (citing, *inter alia*, *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002)); *see also In re T.C.*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who opts to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings). We turn our analysis to the evidence supporting the trial court's best-interest finding.[2]

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors in performing their analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include the following: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the

---

[2] To determine whether the evidence is legally sufficient to support the trial court's best-interest finding, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable fact-finder could form a firm belief or conviction that termination of parental rights is in the child's best interest. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination findings. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). We review the whole record to decide whether a fact-finder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28.

stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. Additionally, a "trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Here, the record demonstrates a fairly extensive failure on April's part to show that she had the ability to meet the present and future emotional and physical needs of the children. Especially with respect to the two older children, Joseph and Justin, it would appear they have specific medical needs that require a great deal of dedication and logistical resources and organization, none of which April has demonstrated. The record shows that it was allegations of medical neglect due to several missed crucial appointments with healthcare providers that prompted Department involvement. Even with so much emphasis placed on the importance of her getting the children the medical care they need, her attendance and her participation in the appointments remained substantially lacking considering the very serious and long-term medical conditions suffered by Joseph, specifically. A child's basic needs include medical care. *In re K.S.O.B.*, No. 01-18-00860-CV, 2019 Tex. App. LEXIS 2490, at *55 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.). April's failure to make certain her children got the appropriate medical care suggests she cannot understand the gravity of their

6

medical needs or simply lacks the ability to meet them, or both. Regardless of the reason, it is relevant to the best-interest analysis that those needs were not met by her care. *See* TEX. FAM. CODE ANN. § 263.307(b)(12)(A), (F) (West 2019) (considering whether parent demonstrated adequate parenting skills when determining if parent was willing and able to provide child with safe environment); *see also In re M.A.A.*, No. 01-20-00709-CV, 2021 Tex. App. LEXIS 2315, at *68 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet. h.) (citing *In re K.S.O.B.*, 2019 Tex. App. LEXIS 2490, at *56, to support position that trier of fact can infer from parent's past inattention to child's medical needs that such inattention will continue in future).[3]

Later allegations of neglectful supervision also speak to the parenting abilities of April. April's failure to protect or supervise her young children endangered their physical and emotional well-being, further evidence that April cannot understand and meet the needs of the children. *See In re M.A.A.*, 2021 Tex. App. LEXIS 2315, at 49. [4]

April's erratic work and residential history also reveal that she is unable to provide the children with a stable home. *In re G.R.*, No. 07-16-00277-CV, 2016 Tex. App. LEXIS

---

[3] We add that the record shows that April's current residence would not accommodate Joseph's wheelchair and that April currently lacks reliable transportation. This too strengthens the inference that April's inability to meet the children's medical needs would continue in the future. The Department testified that April had not developed a concrete plan for the day-to-day care of the children and for their special medical needs.

[4] Pursuant to the Texas Supreme Court opinion in *In re N.G.*, we generally review the trial court's findings under section 161.001(b)(1)(D) and (E) whenever challenged even when another ground for termination is sufficient. This is so because of the potential future consequences to a parent's parental rights concerning a different child. *See In re N.G.*, 577 S.W.3d at 235–37. The record here reveals a pattern of neglecting the children's physical and emotional needs. Specifically, evidence supports a finding that April neglected the medical needs of at least the two older children, Joseph and Justin. This medical neglect endangers the children. *See In re J.D.G.*, 570 S.W.3d 839, 852 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). As to evidence that April neglectfully supervised the children, we note that parent's failure to protect or supervise young children also endangers the children's physical or emotional well-being. See *In re M.A.A.*, 2021 Tex. App. LEXIS 2315, at 49. The record contains sufficient evidence upon which the trial court could have found that subsections (D) and (E) supported termination of April's parental rights.

11572, at *15 (Tex. App.—Amarillo Oct. 25, 2016, no pet.) (mem. op.) (noting that parent was unable to maintain steady employment or housing during termination case in considering stability of potential placement with parent).  Children need a safe and stable home.  *See In re M.A.A.*, 2021 Tex. App. LEXIS 2315, at *61 (citing TEX. FAM. CODE ANN. § 263.307(a) for its position that prompt and permanent placement of child in safe environment presumed to be in child's best interest).

And from the record we see that the children have found safety and stability in the home of their paternal grandparents.  *See In re T.A.G.*, No. 04-20-00565-CV, 2021 Tex. App. LEXIS 3903, at *14 (Tex. App.—San Antonio May 19, 2021, no pet. h.) (mem. op.) (considering in best-interest analysis that "the children were thriving" in their current placement).  The record evidence shows that the grandparents have dedicated a great deal of time and energy to make certain these children have a stable and loving home.  According to a Department representative, the grandparents have gone "above and beyond" the minimal medical care the children need and, consequently, the children are thriving.  One of Joseph's doctors reported to the Department that Joseph has made "great strides" in speech and physical therapy since being in his grandparents' care and making it to all his appointments.  The grandparents also expressed their desire to adopt the children and to ensure that the children are able to stay together with everything they need.

We further note April's participation in court-ordered services to address the drug and alcohol abuse and parenting concerns.  They generally were incomplete, though she finished some.  *See M.B. v. Tex. Dep't of Family & Protective Servs.*, No. 03-20-00533-CV, 2021 Tex. App. LEXIS 2796, at *34 (Tex. App.—Austin Apr. 14, 2021, no pet.) (mem.

op.) (considering in best-interest analysis a mother's refusal to avail herself of services or programs that could help her).

Our analysis, like that of the trial court, must focus on the best interest of these children. And, ultimately, the clear and convincing evidence weighs in favor of the trial court's finding that termination of April's parental rights was in the best interest of the three children. We overrule appellant's sole issue and affirm the trial court's judgment terminating the parent-child relationship.


Per Curiam