ACCEPTED
01-15-00556-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/1/2015 4:52:17 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00556-CV
In the Court of Appeals for the
First District of Texas at Houston, Texas

————————————————————————————

In the Interest of S.R.-M.C., Child

———————————————————————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/1/2015 4:52:17 PM

CHRISTOPHER A. PRINE
Clerk

**RAC, Sr. aka RC, Appellant**

**v.**

**Department of Family & Protective Services, Appellee**

————————————————————————————

On appeal from the Harris County District Court
313th Judicial District; No. 2010-08247J

————————————————————————————

**APPELLEE'S BRIEF**

————————————————————————————

VINCE RYAN
COUNTY ATTORNEY
State Bar #99999939
Sandra D. Hachem (SBN 08667060)
Sr. Assistant County Attorney
1019 Congress, 17th Floor
Houston, Texas 77002
Telephone:  (713) 274-5293
Facsimile:  (713) 437-4700
Email: sandra.hachem@cao.hctx.net
ATTORNEY FOR APPELLEE,
DEPARTMENT OF FAMILY &
PROTECTIVE SERVICES

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... ii

INDEX OF AUTHORITIES............................................................................... iii

ABBREVIATIONS .............................................................................................iv

STATEMENT OF THE CASE..............................................................................iv

REPLY POINT ....................................................................................................iv

STATEMENT OF FACTS .....................................................................................1

SUMMARY OF ARGUMENT ..............................................................................7

ARGUMENT AND AUTHORITIES.....................................................................9

**REPLY POINT ONE:  The evidence sufficiently supported the court's findings for termination of RC's parental rights...................................................9**
    **1.  The Claims, the Law and Standard of Review .......................................9**
    **2.   The unchallenged finding under Subsections (O) concerning RC's failure to comply with the court's order for reunification is binding in this court's review and warrants parental termination... .......12**
    **3.  The undisputed fact that the father made no effort to contact the child and admitted his lack of resources or ability to parent coupled with the fact he took no action to comply with the court ordered service plan, other than allowing DNA testing, supported the court's finding under N. .......................................................................14**
    **4. There was sufficient proof for the trier of fact's finding that termination was in the child's best interest considering the evidence in support of Subsections N and O...............................................16**

PRAYER FOR RELIEF ......................................................................................19

CERTIFICATE OF SERVICE ............................................................................20
CERTIFICATE OF WORD COUNT COMPLIANCE...........................................20

Appendix .......................................................................................... attached

# INDEX OF AUTHORITIES

**CASES**                                                                             **PAGE**

*In re A.V.*, 113 S.W.3d 355 (Tex. 2003) ...............................................................14

*In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).. ...................................................9, 11, 18

*In re E.A.F.*, 424 S.W.3d 742 (Tex. App.—
  Houston [14th Dist.] 2014, pet. denied)...............................................................10

*In re E.C.R.*, 402 S.W.3d 239 (Tex. 2013) .............................................................18

*Holick v. Smith*, 685 S.W.3d 18 (Tex. 1985).............................................................9

*Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976) .......................................................17

*In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002) ...............................................................11

*In re J.O.A.,* 283 S.W.3d 336 (Tex.2009) .................................................................9

*In re U.P.,* 105 S.W.3d 222
  (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ...................................16, 17

**STATUTES**

Tex. Fam. Code An. §101.007 (West 2014)..............................................................11

Tex. Fam. Code Ann. §161.001 (West 2008)...................................v, 9, 10, 13, 15

Tex. Fam. Code Ann. §263.307 (West 2014).........................................................17

## ABBREVIATIONS

In this Brief, the following abbreviations will apply:

**PARTIES**

RC: refers to the Appellant, the Father/Respondent.

RM: refers to the Mother, the Respondent at trial.

SC: refers to the child at issue in this appeal

**APPELLATE RECORD**:

CR: refers to the Clerk Record

RR-2: refers to the 2nd Volume of the Reporter's Record with trial testimony.

RR-3: refers to the 3rd Volume of the Reporter's Record containing exhibits.

## STATEMENT OF THE CASE

On August 29, 2014, the Department filed a motion to modify and suit for protection of the subject child (SC). CR[1] 89. A bench trial was held on May 13, 2015. CR 103. A judgment was thereafter signed on June 2, 2015 that terminated the parent-child relationships of the RM (mother), and RC (Father) of SC. CR 105-06. Per Tex. R. Civ. P. 306, the judgment as to both parents recited the predicate bases warranting parental termination under Subsections (N) and (O) of Section 161.001(1) of the Family Code. *Id*. RC filed a timely notice of appeal. CR 114. The brief on behalf of RC to which this brief responds challenges the sufficiency of the evidence for the finding that termination was in the child's best interest, and the predicate finding under Subsection N.

## REPLY POINT

**Reply Point: The evidence sufficiently supported the court's findings for termination of RC's parental rights.**

---

[1] In this brief "CR" refers to the Clerk's record filed in this appeal.

No. 01-15-00556-CV
In the Court of Appeals for the
First District of Texas at Houston, Texas
_____

In the Interest of S.R.-M.C., Child
_____

**RAC, Sr. aka RC, Appellant**

**v.**

**Department of Family & Protective Services, Appellee**

_____

**APPELLEE'S BRIEF**
_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Department of Family & Protective Services, Appellee, [hereinafter "Department"] submits this brief in response to the brief of RC.

## STATEMENT OF FACTS

On June 26, 2012, a decree was signed concerning the subject child SC and her older sister EW that placed them in the Department's sole managing conservatorship without terminating parental rights. CR 59. At the time the order was signed, SC was 4 years old and her older sister was almost 18. RR-3 p. 17. RC was named as one of alleged fathers in the judgment, but paternity was not established at that time. CR 60. The decree removed the mother as a managing conservator and limited her rights as a possessory conservator. CR 61.

A couple years later, on July 2, 2014, the court ordered RC to remain in the courtroom to take a DNA test. Appendix,[2] Attachment 1 (Image #61643812). That same month, the court ordered the parents to complete the Family Service plans that had already been on file for several months, since October of 2013, and the court attached the October plans to the court's order. CR 71. The October service plans recited the Department's concerns and goals as well as tasks for each parent to complete. RR-3 p. 51.

The plan prepared for the alleged father, RC, included details about the Department's concerns about the child's family situation. RR-3 p. 52; *Se also* CR 82. In particular, it described the child's mother as violent and out of control with discipline methods that were disproportionately harsh. *Id.* It also noted that RM had physical altercations with her oldest child on a regular basis. *Id.* It noted that the mother had no stable residence, was living in a hotel that was not appropriate for the youngest child to live in, and that the mother had a history of homelessness. *Id.* The Department's plan also expressed concern that the mother appeared unconcerned about SC being in a safe and protected environment. RR-3 52.

One of the general goals of the plan was for each parent to "show the ability to parent and protect the child." RR-3 p. 52. In connection with that goal, the plan specified numerous tasks the parents should complete; and for the father, RC, in

---

[2] The appendix contains documents that did not appear in the clerk's record, but the Department requested the clerk to supplement the appellate record with them.

particular, it required that: (1) the father maintain a positive support system that is safe, crime free and drug free; (2) that he submit to DNA, (3) successfully complete parenting classes, (4) provide his caseworker sources of income for him and his child by the 15th of each month and maintain stable employment for at least six months; (5) provide the worker with release of information forms, (6) participate in meetings and court hearings regarding his child and provide truthful information; (7) maintain stable and safe housing for at least six months (8) complete a psychological evaluation and (8) participate in drug/alcohol testing. RR-3 p. 53-54.

On September 12, 2014, the court signed an order that formally adjudicated RC as the child's father.[3]  Appendix, Attachment 2 (Image #62545110).  Trial commenced about nine months later: on May 13, 2015. RR-3 p. 4.  Neither parent was at trial.  The mother told her attorney she had just gotten out of the hospital and did not feel up to coming. RR-2 p. 13.

The caseworker, Jamelle Gibbs, was the only witness at trial. She acknowledged that the mother had been named possessory conservator of the child since 2012 (over 3 years earlier). RR-2 p. 14-15.  She noted after she was named possessory conservator, the Department asked the mother to participate in two

---

[3] This interlocutory order was later incorporated into the court's final judgment. CR 111.

3

service plans, but the gist of both plans was basically the same thing: that she acquire stable employment and housing. RR-2 p. 15.

The Department's caseworker did not believe the mother showed compliance in her services; and, in particular, she did not take her drug tests and had not found housing. RR-2 p. 18-19. The caseworker did not believe she had completed anything from her service plan. RR-2 p. 16. She acknowledged the mother told her she was employed at Zone D'Erotica but she did not provide any pay stabs or proof of income. RR-2 p. 16. Consequently, the caseworker had no proof that she could provide the child with a safe and stable environment. RR-2 p. 16. In fact, she had no evidence that the mother even wanted to parent the child. RR-2 p. 16-27. She stated while over the years the mother had indicated she wanted to provide for the child, since September 2014 she continued to just tell the caseworker that the Agency could have her child. RR-2 p. 17. Consequently, she did not believe she wanted to parent the child. RR-2 p. 17.

The caseworker acknowledged that the mother's access to the child had been limited by the court in an order before the present motion to modify was filed. RR-2 p. 17-18. She noted that occurred around March of 2014. RR-3 p. 27. She indicated the court limited her access because she would tell the child not to listen to any other adult and the child's behavior went in a negative direction after her visits. RR-2 p. 18. The mother did not do anything to reinstate her visitation and

4

access. RR-2 p. 19. After her rights to visits and access were limited, she asked about her child only about four times, and the caseworker believed she essentially abandoned the child. RR-2 p. 19.

The caseworker stated that the child's father was living in Indianapolis, "India [sic.]."[4] RR-2 p. 10. The caseworker mailed him a plan of service and went over it with him by phone. RR-2 p. 20. She stated he gave a DNA sample in 2014 as required by the plan, but did not complete the plan. RR-2 p. 20-21. In particular, she noted he did not visit the child and never reached out to the Department to set up visits or phone contact. RR-2 p. 21. She also noted he did not provide for his child financially and never sent the child letters, gifts, support or clothing. RR-2 p. 21-22. He essentially abandoned her. RR-2 p. 22.

The caseworker stated she believed the father abandoned the child, because it had been four years and he failed to show any interest in her whatsoever. RR-2 p. 30. She noted he did not write the child, and did not attempt to video chat, or phone the child. RR-2 p. 33. Also, when the caseworker spoke with the father about parenting the child, he responded that he was not able to parent and added he was not stable. RR-2 p. 22. He stated he had a job, but was not working much and suggested maybe one of his sisters could get the child. RR-2 p. 22. The

---

[4] This is obviously a typo. The address of RC was in Indiana. RR-3 p. 17.

caseworker stated she had no evidence that he was financially able to parent the child or that he could provide a safe and stable home. RR-2 p. 22.

The father told the caseworker about two relatives, but she noted if she had not asked the father about potential relatives, her conversation with him would have ended there. RR-2 p. 22-23. As to the two relatives the father referred her to for placement, they both lived in Indiana. RR-2 p. 23. She stated that ICPC requests were submitted for those individuals. RR-2 p. 23. However, the first proposed relative, an aunt, was denied, because she failed her FBI background check; and the second was denied due to noncompliance. RR-2 p. 23.

The caseworker stated that SC is a sweet little girl, but her parents had not been able to provide her with the basic things needed to thrive and live. RR-2 p. 24. She noted the child had been in care for four-plus years, had been in numerous placements and deserved stability. RR-2 p. 24.

The caseworker noted the child was at that time in a foster home where she had been for a year and all her physical and emotional needs were met there. RR-2 p. 12-13. The caseworker acknowledged the agency had not identified an adoptive placement for the child yet. RR-2 p. 25. Nevertheless, she stated if the court terminated the parents' rights that would open up the pool to where she could actually be broadcasted to obtain permanency. RR-2 p. 25.

The caseworker noted the child was diagnosed with mood disorder and ADHD but was responding positively to the medications to address those conditions. RR-2 p. 13. She stated she believed the Department would be able to find an adoptive home for the child once she is freed for adoption and believed it would be in the child's best interest. RR-2 p. 32.

## SUMMARY OF ARGUMENT

The Appellant's Brief of the Father (RC) challenges the sufficiency of the evidence to support some of the findings in support of the court's decision to terminate his parental rights. Namely, the brief challenges the legal and factual sufficiency of the evidence to support the court's findings that termination was in the child's best interest and that RC constructively abandoned the child for a finding under Subsection N. Those challenges should be overruled, because the evidence supported the court's finding under N as well as the best interest finding.

Moreover, the brief does not challenge the court's findings regarding RC's failure to comply with the court order for reunification for a finding under O. That omission impacts this court's review, because that unchallenged finding is binding in this court's review, obviates the need for review of the challenge to Subsection N and provides support for the court's finding that termination was in the child's best interest.

In addition, the evidence in this case is essentially undisputed in support of the court's conclusion that parental termination was in the child's best interest. This child has not received the basic things a child needs from a parent for the last four years while this child has lingered in foster care and there is no indication that RC ever reached out to this child. While this father complied with a court order to undergo DNA testing to find out his paternity, that was the extent of his efforts. He did not do anything else the court ordered in the plan that was created for his child's benefit to try and come up with a permanent solution.

Also, it is undisputed that the father did not believe he was able to parent considering his instability and the only reason the caseworker learned about relatives from his family was because she asked him to provide that information. She basically indicated he was apathetic in his response to this child. He did not write the child, made no efforts to speak or meet with the child and did nothing to provide emotional or financial support for this child. The caseworker was correct in her conclusion that he abandoned this child.

While an adoptive home had not yet been located for this child, the caseworker believed there would be a greater opportunity for that option if the parents' rights were terminated. Under those circumstances, the caseworker was correct in concluding that parental termination would provide the only plan for this child's best interest and hope for permanency with a family. Consequently, the

evidence was essentially undisputed under these facts to support the court's conclusion that parental termination was in the child's best interest. The challenges to that judgment should be denied and the judgment affirmed.

**ARGUMENTS AND AUTHORITIES**

**REPLY POINT:  The evidence sufficiently supported the court's findings for termination of RC's parental rights.**

### 1.      The Claims, the Law and Standard of Review

It is acknowledged that the involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.3d 18, 20 (Tex. 1985). However, it is also acknowledged that a child's emotional and physical interests cannot be sacrificed merely to preserve that right. *See In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).  Consequently, there can be circumstances when termination of parental rights is warranted.

In this State, it is legally recognized that parental termination can be warranted if a court finds by clear and convincing evidence that (1) the parent committed at least one of the predicate acts listed under the statutory list provided at section 161.001(1) of the Family Code; and (2) that termination is in the best interest of the child. Tex. Fam.Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009).   In this case, the trial court found parental termination warranted on clear and convincing evidence that the father (RC) committed the predicate acts described at subsections N and O of section

161.001(1) of the Family Code and that parental termination was in the child's best interest. CR 114.

In this appeal, the Appellant's Brief challenges the legal and factual sufficiency of the evidence for the court's finding that parental termination was in the child's best interest and for the predicate act described at subsection N. Appellant's Brief does not challenge the evidence in support of the predicate act described at subsection O. The failure to challenge the court's finding under O is significant in this court's review for three reasons.

First, it is significant, because unchallenged predicate findings are treated as binding on appeal. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Second, since only one predicate finding is required to support a court's decision to terminate parental rights that means this court need not review the challenge in Appellant's Brief to Subsection N in order to affirm the trial court's decision to terminate RR's parental rights. *Id.* Third, because the finding of Subsection O is supportive of a best interest determination, this binding finding impacts this court's review of the challenge in Appellant's Brief to the finding concerning best interest. *Id.*

As far as the Standard of Review for the challenge in Appellant's Brief, it is acknowledged that the Family Code imposes a heightened standard of proof at trial described as "clear and convincing." *See* Tex. Fam. Code Ann. §161.001 (West

2008). The Family Code also specifically defines that standard to mean "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code An. §101.007 (West 2014).

The heightened standard of proof at trial requires an appellate court to consider that standard when reviewing challenges to the sufficiency of the evidence. *See In re C.H.,* 89 S.W.3d at p. 25 (Tex. 2002) ("burden of proof at trial necessarily affects appellate review of the evidence."); *In the Interest of J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002).* In that connection, both legal and factual sufficiency challenges consider the standard of proof for clear and convincing evidence by considering whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *See In re C.H.*, 89 S.W.3d at p. 25 (Tex. 2002); *In re J.F.C., 96 S.W.3d at pp. 265-66;* Tex. Fam. Code Ann. 101.007 (West 2014).

In *In re J.F.C.* the Supreme Court explained, in light of the identical inquiries made to the clear and convincing standard, the distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but clarified that there is a distinction in how the evidence is reviewed. 96 S.W.3d at p. 266. The court explained that in a legal sufficiency review, a court should look at all of the evidence in the light most

11

favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true, giving appropriate deference to the trier of fact. Id. In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and with respect to disputed evidence, a court should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. Id. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. 96 S.W.3d at pp. 266-67.

**2. The unchallenged finding under Subsections (O) concerning RC failure to comply with the court's order for reunification is binding in this court's review and warrants parental termination.**

As already discussed, the trial court's finding under Subsection O is not challenged in this appeal and, as such, it is binding in this court's review of this appeal. Nonetheless, the facts entailed in that finding should be briefly mentioned to emphasize its importance in review of the trial court's decision to terminate RC's parental rights.

Subsection O involves a finding that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for

12

the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. Tex. Fam. Code Ann. 161.001(1)(O) (West 2008). The facts related to this finding in this case should be considered because they illustrate an important reason why the court correctly determined parental termination was warranted.

Namely, as explained in the service plan ordered in this case, its purpose was to help RC provide his child with a safe environment within a reasonable period of time and warned that failure to do so could result in termination of parental rights. RR-3 p. 56. In this regard, the specific goals listed for both parents involved the parents showing their ability to parent the child with appropriate resources, as well as extending appropriate affection and demonstrating the ability to bond with the child. RR-3 p. 52-53. The tasks in the plan supported those goals by requiring the parents to maintain positive support systems, learn parenting skills, provide proof of adequate income, participate in court hearings and meetings regarding the child, and maintain a safe and stable home where the child could live. RR-3 p. 53-54.

The caseworker confirmed she went over the service plan with the father on the phone; therefore, RC would have known that doing things that would show his ability and willingness to assume the responsibilities of a father-daughter

relationship was essentially what was being asked of him. RR-2 p. 20. However, by the time of trial, the father did not complete anything ordered in that plan except for the DNA testing to confirm his paternity. RR-2 p. 20-21. In addition, it does not appear he wanted to work on this situation, because when he was asked whether he wanted to parent his child, he merely stated that he was not able to parent his child and talked about his lack of stability. RR p. 22. The caseworker acknowledged she had no evidence to indicate he had stability, but that really did not explain why he was unwilling to work on doing anything that would help his child. Consequently, the evidence indicated he simply was apathetic about the situation of this young child and that proved he had an inappropriate parental relationship. Such evidence provided pivotal support for the court to find a predicate basis warranted termination of RC's parental rights and supported the court's finding as to best interest as well. Consequently, the court's finding on this unchallenged ground includes important facts relevant to review in this appeal.

3. **The undisputed fact that the father made no effort to contact the child and admitted his lack of resources or ability to parent coupled with the fact that he took no action to comply with the court ordered service plan, other than allowing DNA testing, supported the court's finding under N.**

As already mentioned, because there is no challenge to the predicate finding under O, the finding under N need not be considered. *In re A.V.*, 113 S.W.3d 355 (Tex.2003). Nonetheless, the facts in support of that finding are equally

important in illustrating why the court found parental termination warranted. Therefore, it shall be addressed.

Section 161.001(1)(N) of the Family Code provides a predicate basis for parental termination on clear and convincing proof that the parent:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and:
> (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment.

Tex. Fam. Code § 161.001(1)(N) (West 2008).

The evidence in this case provided undisputed proof in support of all of the elements of proof required for this finding, because:

1. It was undisputed that the child was in the Department's temporary or permanent managing conservatorship for approximately four years. RR-2 p. 24.
2. It was undisputed that the Department made reasonable efforts to return the child to RC by administering a family service plan for him during these proceedings and ensuring he would be ordered to submit to DNA testing in that plan. RR-2 p. 20; RR-3 p. 51; *In re G.S.*, slip op. at p. 11, No. 14-14-00477-CV (Tex. App. – Houston [14th Dist.] 2014, no pet. h.) (mem. op.) ("Implementation of a family service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent.").
3. The evidence was undisputed that RC did not reach out to contact the child or make arrangements to visit or phone, did not financially provide for the child or ever send letters or gifts. RR-2 p. 21-22.

15

4. <u>The evidence was undisputed that RC stated he was not able to parent, talked about his lack of stability and the caseworker had no evidence he was employed or had the financially ability to support the child.</u> RR-2 p. 22.

Appellant's Brief essentially claims this evidence is insufficient because the Department did not do enough to encourage the father considering he was out of state and lacked stability. Nevertheless, the Department did make efforts by assuming the responsibility of caring for his child while offering him a plan over several months for him to show a willingness to care for his child's needs. While the father obviously had barriers caused by his geographic location and financial circumstances, those barriers were within his control. In addition, those barriers did not explain why he did not at least try to phone the child or send letters or gifts. The record shows that RC simply did not do anything to demonstrate he cared. And as correctly observed by the caseworker, it had been too long a time for this child to have to wait to be cared by a parent when neither parent demonstrated the willingness or ability to do so. The evidence in this case was conclusive as a matter of law that RC constructively abandoned this child.

**4. There was sufficient proof for the trier of fact's finding that termination was in the child's best interest considering the evidence in support of Subsections O and N.**

A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent. *In re U.P.,* 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Nevertheless, when a child comes

16

into care because a parent is neglectful to the child's basic needs, the parental presumption cannot prevail over the child's safety. In that connection, Section 263.307(a) provides a prompt and permanent placement of the child in a safe environment is presumed in a child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014). Section 263.307(b) of the Family Code lists a number of factors a court may consider in deciding a parent's willingness to provide a child with a safe environment and, those factors consider issues such issues as parental drug use and the willingness to cooperate with the Department for reunification, factors relevant in this case. Tex. Fam. Code Ann. 263.307(b) (8) & (10).

In addition, the Supreme Court has articulated a number of factors that can also be considered in determining the best interest of the child. Those factors include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976); *In re U.P.,* 105 S.W.3d at 230.

1. **Needs and Dangers**

As already discussed, there was conclusive proof that RC constructively abandoned his child and had not provided for this child financially or emotionally. Such apathy not only shows RC would not ever provide for this child's needs, but endangered his child's emotional security and stability. This provided conclusive support for the court's finding that parental termination was in the child's best interest.

2. **Stability and Compliance with Services**

As already discussed, there is undisputed evidence that RC failed to comply with his service plan and that supported the court's finding under Subsection O. This same evidence supports the court's best interest finding. *See In re C.H.*, 89 S.W.3d at 27-28; *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (noting reasons supporting finding under Subsection O may also support best interest finding.). On the relevant evidence under O, as discussed above, the court had conclusive proof to find RC lacked stability or willingness to comply with a plan to obtain stability and that evidence supported the finding that parental termination was in the child's best interest.

3. **Child's Desires and Proposed Placement**

It was undisputed that the child was in Department care for over four years and RC had not done anything to personally assume responsibility for the child or

acquire an emotional attachment with the child. Also, RC admitted he could not parent and lacked stability, and did not do anything during this case to show he had interest in changing that situation. In the meantime, the child remained in foster care and while the caseworker acknowledged an adoptive home had not been found, she believed there could be an opportunity if parental rights were terminated. Given these facts, the child's obvious desire to be a child loved in a stable and permanent home weighed in favor of parental termination.

In conclusion, the record in this case conclusively establishes that parental termination was in the child's best interest, primarily based on the same evidence that supported the court's findings under Subsections N and O. As there was no disputed evidence of any significance to outweigh that conclusion, the trial court's findings should be affirmed.

WHEREFORE, PREMISES CONSIDERED, the Department requests that this court affirm the trial court's judgment and for such other and further relief to which it may be entitled in law or in equity.

Respectfully submitted,

VINCE RYAN
COUNTY ATTORNEY

By: */s/ Sandra Hachem*
**Sandra Hachem State Bar 08667060**
Sr. Assistant County Attorney
1019 Congress, 17th Floor
Houston, Texas 77002

19

Phone: 713/274-5293; Fax: 713/437-4700
Email: sandra.hachem@cao.hctx.net
Attorney for Appellee,
Department of Family & Protective Services

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of October, 2015 a true and correct copy of the foregoing brief was sent to all parties to this appeal by sending a copy by electronic transmission to the Appellant (RC) care of his attorney of record, Donald Crane at donmcrane@gmail.com, and to the Attorney and Guardian Ad Litem for the Child, Sylvia Escobedo, at her fax number: 713/583-4877.

*/s/ Sandra Hachem*
Sandra Hachem

## CERTIFICATE OF WORD COUNT COMPLIANCE

This is to certify, pursuant to Tex. R. App. P. 9.4(i)(3), that the foregoing computer generated brief consists of no more than 15,000 words, excluding the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service, certification, certificate of compliance and appendix. Relying on the word count of the computer program used to prepare this document, the number of words, subject to count under the rules, is 4,674 words.

*/s/ Sandra Hachem*
Sandra Hachem

No. 01-15-00556-CV
In the Courts of Appeals for the
First District of Texas at Houston, Texas
_____

In the Interest of S.R.-M.C., Child
_____

**RAC, Sr. aka RC, Appellant**

**v.**

**Department of Family & Protective Services, Appellee**

_____

## **Appendix**

Order for DNA testing…………………………………………………...Attachment 1

Order Determining Paternity…………………………………………….Attachment 2

**Tab 1**
**Order for DNA testing**

**JAMELLE GIBBS 182-3**
**TIFFANY DIXON 182-3**

MFBTY

**CAUSE NO. 2010-08247J**

ORIGINAL

**IN THE INTEREST OF**

**FILED**
Chris Daniel
District Clerk

**IN THE DISTRICT COURT OF**

S█████ R████-M████ C██████

JUL 02 2014
Time:_____
Harris County, Texas

**HARRIS COUNTY, TEXAS**

**CHILD**

By_____
Deputy

**313TH JUDICIAL JUVENILE DISTRICT**

## ORDER FOR <u>DRUG</u> / <u>ALCOHOL</u> / <u>D.N.A.</u> SCREENING

The following person(s) are **ORDERED** to:

[XX]  Report in person IMMEDIATELY to:  Avertest c/o National Screening Center 2525 Shadeland Ave.; Building 30, Door 11
Indianapolis, IN 46219-1787, 317-353-3395

[✔]  Remain in the Courtroom;

[  ]  Allow National Screening Center to collect sample at _____

Each individual is **ORDERED** to remain in their respective location until samples have been drawn.  Each individual named herein is ORDERED to provide such personal sample(s) as may be necessary for National Screening Center to perform the **ORDERED** Drug / Alcohol / D.N.A. screening as follows:

| NAME: | DOB | TDL/ID/SS# | TEST |
|---|---|---|---|
| 1.  R████ A███ C██████ | ████████ | XXX-XX-████ | [  ] UDS |
| Relationship  <u>ALLEGED FATHER of S████ R███-M███ C███</u> | | | [  ] HAIR |
| | | | [XX] D.N.A. |
| | | | [  ] ETG |
| | | | [  ] Z.T. |
| | | | [  ] K2. |
| | | | [  ] Bath Salts |

**(UDS = Urine Drug Screen; ETG = Alcohol Test; HAIR = Hair Follicle Drug; D.N.A.  Paternity Testing; Z.T. = Zero Tolerance)**

It is further **ORDERED** that:       [   ] Each party named above is responsible and shall pay for each test administered

[XX ] The costs of the test shall be paid as follows:  <u>HARRIS COUNTY</u>

The COURT reserves the right to re-allocate the costs of the test(s) between the parties.  It is **ORDERED** that as soon as the results of the test(s) are available, National Screening **SHALL** fax OR deliver the results, with **CASE NUMBER**, to the 313th District Court at FAX # 713-222-4845 for filing with the court <u>under seal</u>.  National Screening shall also provide the PRINTED NAME of the person transmitting the FAX results, the method(s) by which the person tested was identified and the date and time the sample was taken.

SIGNED ON:  **JUL 0 2 2014** _____

_____
**JUDGE**

For Official Governmental Use Only - Do Not Disseminate to the Public: 61643812 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   October 1, 2015

Certified Document Number:        61643812 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Tab 2**
**Order Determining Paternity**

FILED
Chris Daniel
District Clerk

SEP - 4 2014

Time:_____
Harris County, Texas
By_____
Deputy

ORIGINAL

**JAMELLE GIBBS 182-3**
**TIFFANY DIXON 182-3**

**CAUSE NO. 2010-08247J**

| | |
|---|---|
| **IN THE INTEREST OF** | **IN THE DISTRICT COURT OF** |
| **S███ R███-M███ C███** | **HARRIS COUNTY, TEXAS** |
| **CHILD** | **313TH JUDICIAL JUVENILE DISTRICT** |

## ORDER ESTABLISHING PARENTAGE

On September 12, 2014, a hearing was held pursuant to Texas Family Code, Chapter 160, to determine the parentage of the child S███ R███-M███ C███.

**1.     Appearances**

1.1.    The Department of Family and Protective Services ("the Department") appeared through **JAMELLE GIBBS**, caseworker, and by attorney and announced ready.

1.2.    Respondent MOTHER **R████ M███ M█████ A██ R███ M██ K████ AKA R████ M██ M███ K████ M█████**
☐ appeared in person and announced ready.
☐ appeared through attorney of record _____ and announced ready.
☐ appeared in person and through attorney of record _____ and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☑ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

1.3.    Respondent ALLEGED FATHER **R███ A██ C████ AKA R████ C████**
☐ appeared in person and announced ready.
☐ appeared through attorney of record _____ and announced ready.
☐ appeared in person and through attorney of record _____ and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☑ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

Order Establishing Parentage
Page 1

2010-08247J / 313th
Amanuensis 4.0

For Official Governmental Use Only - Do Not Disseminate to the Public: 62545110 - Page 1 of 5

1.4. Respondent ALLEGED FATHER D███ M███

☐ appeared in person and announced ready.

☐ appeared through attorney of record _____ and announced ready.

☐ appeared in person and through attorney of record _____ and announced ready.

☐ waived issuance and service of citation by waiver duly filed.

☐ agreed to the terms of this order as evidenced by signature below.

☒ although duly and properly notified, did not appear and wholly made default.

☐ was not notified, and did not appear.

1.5. **SYLVIA YVONNE ESCOBEDO**, appointed by the Court as Attorney and Guardian Ad Litem of the child the subject of this suit,

☒ appeared and announced ready.

☐ agreed to the terms of this order.

☐ agreed to the terms of this order, but did not appear

☐ although duly and properly notified, did not appear.

1.6. Also Appearing _____

_____

_____

_____

## 2. The Child

This parentage order adjudicates parentage of the following child:

Name: S███ R███-M███ C███

Sex: **Female**

Date of Birth: ████████

## 3. Findings: Alleged Father R██████ A████ C██████ AKA R██ C███

3.1. **R██████ A████ C██████ AKA R██ C██████ Established as Father of the Child S███ R███-M███ C███**

3.1.1. The Court finds that the genetic tests do not exclude R██████ A████ C██████ AKA R██ C██████ as the father, and that he has at least a 99 percent probability of paternity, using a prior probability of 0.5, as calculated by using the combined paternity index obtained in the testing and a combined paternity index of at least 100 to 1 with respect to the child S███ R███-M███ C███ born on ████████ to R██ M███ M███.

For Official Governmental Use Only - Do Not Disseminate to the Public: 62545110 - Page 2 of 5

3.1.2. **IT IS THEREFORE ORDERED** that R███ A███ C███, ███ AKA R███ C███ is, and he is hereby adjudicated as the father of the child S███ R███-M███ C███.

3.1.3. The Court finds that it is in the best interest of the child to limit the rights and duties of each parent appointed as a temporary possessory conservator.

SIGNED this _____ day of SEP 0 9 2014 _____, 2014.

_____
JUDGE PRESIDING

Respectfully Submitted,
Vince Ryan
Harris County Attorney
SPN # 999999909

Amelia B. Strickling
Assistant County Attorney
2525 Murworth Drive, Suite 300
Houston, Texas 77054-1603
State Bar #       24062183
*email:*          amelia.strickling@cao.hctx.net
*phone:*          713-578-3900
*fax:*            713-578-3995

For Official Governmental Use Only - Do Not Disseminate to the Public: 62545110 - Page 3 of 5



For Report Consultation Please Contact:
National Screening Center
407 Fannin Street
Houston, TX 77002
713-226-7847

1825 W. CREST LANE
PHOENIX, AZ 85027 USA
+1.623.434.0292 (O)
+1.623.321.6118 (F)
www.chromosomal-labs.com
www.bodetech.com

TPA Case NO TPA CASE #
Logged 7/11/2014
Case No. PL14-09915

## Paternity Report - Legal Test

| No. | Name | Relationship | Race/Ethnicity | Collected |
|-----|------|--------------|----------------|-----------|
| 14-11663 | S      C | Child | - | 7/9/2014 |
| 14-08913 | R      C | Alleged Father | Black | 7/8/2014 |

| Loci | 14-11663 Allele A | 14-11663 Allele B | 14-08913 Allele A | 14-08913 Allele B | Paternity Index (PI) |
|------|---------|---------|---------|---------|-----------------------|
| D8S1179 | 13 | 16 | 15 | 16 | 5.31 |
| D21S11 | 27 | 33.1 | 28 | 33.1 | 19.2 |
| D7S820 | 9 | 11 | 9 | 10 | 1.57 |
| CSF1PO | 7 | 12 | 12 | 13 | 0.829 |
| D3S1358 | 17 | 18 | 15 | 18 | 4.39 |
| TH01 | 8 | 9.3 | 8 | 9.3 | 3.67 |
| D13S317 | 11 | 12 | 11 | | 2.09 |
| D16S539 | 9 | 13 | 11 | 13 | 1.5 |
| D2S1338 | 20 | 22 | 20 | 22 | 5.59 |
| D19S433 | 13 | 13.2 | 13 | 14.2 | 0.838 |
| vWA | 17 | | 17 | | 5.39 |
| TPOX | 8 | | 7 | 8 | 1.35 |
| D18S51 | 17 | | 17 | 18 | 3.01 |
| AMEL | X | | X | Y | 1 |
| D5S818 | 12 | 13 | 10 | 13 | 1.01 |
| FGA | 19 | 25 | 19 | 21 | 4.51 |
| Combined Paternity Index | | | | 3,132,000 | |
| Probability | | | | >99.999% | |

Interpretation: The results indicate that the alleged father cannot be excluded as the biological father of the child. The reported probability as compared to an unrelated, untested man of the same race, is calculated assuming a prior probability of 0.5.

Chromosomal Labs • Bode Technology is an AABB Accredited Relationship Testing Facility.

OFFICIAL SEAL
MELISSA VALMONTE
Notary Public - Arizona
MARICOPA COUNTY
My Commission Expires
AUGUST 28, 2017

Gidget Hudson, Ph.D., Paternity Laboratory Director
Ed Kot, Ph.D., Assistant Paternity Laboratory Director

STATE OF ARIZONA
COUNTY OF MARICOPA
Acknowledged before me 07/15/14

Notary Public

PL14-09915 Page 1 of 2

A SolutionPoint International, Inc. Company • www.solutionpoint-intl.com
New York • Washington, DC • Lorton • Lenexa • Phoenix • San Diego • Oakland • Dallas • Chicago • Los Angeles • San Francisco • Palm Beach • London • Juba • Riyadh

For Official Governmental Use Only - Do Not Disseminate to the Public: 62545110 - Page 4 of 5

# Relationship Testing - Case Narrative

## Analytical Platform
Paternity test results and conclusions are founded in statistics and probabilities. The greater the number of genetic markers examined, the greater the strength of the genetic evidence and hence the greater the reliability of the final result. Chromosomal Labs • Bode Technology tests a minimum of 16 DNA markers in routine relationship testing. The 16 marker technology can achieve a probability of identity of 1 in 40 quintillion, or 1 in 40,000,000,000,000,000,000. Paternity laws tend to vary from state to state. The following web link provides a nice synopsis for many states: http://lawdigest.uslegal.com/paternity/general

## Amended Reports
Reports documented as superseding another report have been amended and may have changes to test results and/or conclusions.

## Extended Testing
For the majority of paternity cases, the 16 genetic marker panel is more than adequate. However, special circumstances can require extended testing to obtain a statistically desirable result. This typically occurs when there is a single genetic mutation or the mother is not included in the test. Extended testing options can include testing the mother, adding more autosomal genetic loci, or Y chromosome testing, if the child is a male. During case review our doctors may determine that extended testing is necessary or statistically useful, and will make recommendations for extended tests that are likely to be the most productive.

## Motherless Testing
In relationship testing, every effort should be made to test the mother when she is available. DNA testing of the mother, even if maternity is not disputed, improves the chance of obtaining conclusive results and is a quality control check for both the scientific and legal community, to ensure the correct child was tested. While motherless paternity testing is a relatively common practice, it can present a number of problems, ranging from inconclusive results, or in the case of incest or related alleged fathers, a false inclusion.

## Y-Chromosome Testing in Relationship Studies
The Y chromosome is male specific and passes through generations unchanged from father to son. In circumstances where an alleged father is unavailable for testing or is deceased, a male child can be tested against any number of his male relatives including, but not limited to, other known male children, brothers and half brothers with the same father, uncles, a grandfather, and grandfather's brothers. Since the Y chromosome is only found in males, this type of testing is not useful for female offspring. This test is also not appropriate for paternity in circumstances where there are two related alleged fathers.

## Genetic Inconsistencies (Mutations)
Genetic inconsistencies (mutations) are naturally occurring mismatches between a child and the alleged parent. The frequencies of these naturally occurring mismatches are factored into the final combined paternity index. Due to the nature of these calculations, the statistical value of the result is significantly reduced; therefore some degree of extended testing is required to obtain a conclusive result.

## Result Interpretation - Relationship Studies
The results of siblingship, avuncular and grand paternity testing are generally reported as the likelihood in support of or against an alleged relationship. While interpretation of the strength of the statistical value can be variable, and should ultimately be considered in context with all case circumstances, the table below summarizes published interpretative criteria for use as a guide.

| Combined Likelihood Ratio | Probability | Value of Evidence In Support of Hypothesis |
|---|---|---|
| <0.40 | <28.6% | Genetic evidence does not support hypothesis |
| 0.40 to 1.6 | 28.6% to 61.5% | Neutral - Inconclusive |
| >1.6 to 10 | 61.6% to 90.90% | Limited Support |
| >10 to 100 | 90.91% to 99.00% | Moderate Support |
| >100 to 1000 | 99.01% - 99.90% | Strong Support |
| >1,000 | >99.90% | Very Strong Support |

 061314 Rev 11 Case Narrative



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   October 1, 2015

Certified Document Number:        62545110 Total Pages:  5

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**