

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00571-CV

**IN THE INTEREST OF S.A.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA02285
Honorable Richard Garcia, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                 Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  January 24, 2018

AFFIRMED

This is an accelerated appeal from the trial court's order terminating appellant mother's ("Mother") parental rights to her child, S.A. On appeal, Mother does not contest the grounds upon which termination was granted. Rather, she contends only that the evidence is legally and factually insufficient to support the trial court's finding that termination was in the child's best interest. We affirm the trial court's order of termination.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") became involved with the family after the hospital contacted the Department to advise that S.A. was amphetamine-addicted at birth. Soon after the birth, the Department placed the infant with a

paternal aunt and uncle. The Department filed a petition to terminate Mother's parental rights.[1] During the case, the Department created a service plan for Mother, which she signed in March 2017. Under the service plan, Mother was required to: (1) enroll in a family violence course for victims; (2) submit to a psychosocial assessment and meet with a therapist to discuss her issues, particularly her drug issues; (3) submit to random drug testing — only negative results entitled Mother to visitation with S.A.; (4) participate in a substance abuse program; and (5) complete parenting classes. According to the Department caseworker, Crystal Jones, the most important items on Mother's plan were completion of a substance abuse treatment program and domestic violence classes. The trial court ordered Mother to comply with each requirement set out in the plan. Once the Department determined reunification, the initial goal, was not possible, the matter moved to a final hearing, during which the Department presented evidence in support of terminating Mother's parental rights.

At the hearing, the trial court heard testimony from Department caseworker Jones, the child's paternal aunt — J.G., and Mother. At the conclusion of the hearing, the trial court terminated Mother's rights. Thereafter, the trial court rendered a written order of termination finding that Mother: (1) engaged in conduct or knowingly placed S.A. with persons who engaged in conduct that endangered S.A.'s physical or emotional well-being; (2) constructively abandoned S.A.; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of S.A.; and (4) used a controlled substance in a manner that endangered the health or safety of S.A. and failed to complete a court-ordered

---

[1] The Department also sought to terminate the parental rights of S.A.'s father ("Father"). In the same order, the trial court terminated both Mother's and Father's parental rights. However, Father did not file a notice of appeal challenging the termination. Accordingly, he is not a party to this appeal.

substance abuse program.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O), (P) (West Supp. 2017).  The trial court further found termination of Mother's parental rights would be in S.A.'s best interest.  *See id*. § 161.001(b)(2).  Mother timely perfected this appeal.

**ANALYSIS**

As noted above, on appeal, Mother does not challenge the evidence with regard to the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code").  *See id.* § 161.001(b)(1)(E), (N), (O), (P).  Rather, she merely challenges the legal and factual sufficiency of the evidence in support of the trial court's finding that termination was in the best interest of the child.  *See id.* § 161.001(b)(2).

***Standard of Review***

A parent's right to her child may be terminated by a court only if the court finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of her child.  *Id.* § 161.001(b).  "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007.  Courts require this heightened standard of review because termination of a parent's rights to her child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns.  *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015).  When reviewing the legal and

---

[2] At the close of the termination hearing, the trial court orally stated it was also terminating Mother's parental rights based on section 161.001(b)(1)(R).  That provision states that a court may order termination if it finds by clear and convincing evidence that a parent has been the cause of a child being born addicted to alcohol or a controlled substance, other than a controlled substance obtained with a legal prescription.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(R).  However, the trial court's written order of termination did not include subsection (b)(1)(R) as a basis for termination.  In civil cases, when there is a conflict between a trial court's oral pronouncements and its written judgment, the written judgment controls.  *In re M.L.S.*, No. 11-12-00042-CV, 2012 WL 2371042, at *1 (Tex. App.—Eastland 2012, no pet.) (mem. op.) (citing *In re A.S.G.*, 345 S.W.3d 443, 448 (Tex. App.—San Antonio 2011, no pet.)).  Thus, we hold that Mother's parental rights were terminated in accordance with the trial court written order based on subsections (b)(1)(E), (N), (O), and (P).

factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that determination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

### *Best Interests — Substantive Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2012) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future

- 4 -

conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

## *The Evidence*

As noted above, the Department presented three witnesses at the final hearing — the Department caseworker, the child's paternal aunt, and Mother. Through these witnesses, the Department sought to establish, in addition to the grounds for termination, that termination would be in S.A.'s best interest. In analyzing the evidence within the *Holley* framework, we note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

1. *Desires of the Children*

At the time of trial, S.A. was ten months old, and therefore, unable to express her desires with regard to conservatorship. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. However, when a child is unable to express her desires, a fact finder may consider that she has bonded with her foster family, is well cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

Here, there was evidence that S.A. has formed a bond with her foster parents — her paternal aunt and uncle. *See J.D.*, 436 S.W.3d at 118. S.A. was placed with her foster parents when she was two months old, and has been with them for more than eight months. Ms. Jones testified she has seen S.A. with J.G., the child's paternal aunt. When S.A. is with J.G. she is "always happy and smiling." *See id.* Ms. Jones stated S.A. appears to love her aunt and uncle and they, along with their own children, provide a stable environment that meets S.A.'s current needs. *See id.* Ms. Jones testified she believes J.G. and her family will be able to meet S.A.'s needs in the future as well. She concluded by stating she believes S.A. and her foster family have "a good bond." *See id.*

Mother was granted weekly, supervised visits with S.A. However, visitation was contingent upon negative drug screening. Ms. Jones testified Mother visited S.A. "a few" times, but had not seen S.A. since November 2016 — more than eight months before the final hearing. *See id.* Ms. Jones went on to explain that when Mother inquired as to when she could visit S.A., she was told she would need to submit to a drug test and "test clean." Ms. Jones testified that although Mother submitted to drug testing "a few times," she never tested clean after November 2016. Ms. Jones opined that Mother had failed to form a bond due to her lack of visitation. *See id.*

### 2. *Emotional & Physical Needs/Emotional & Physical Danger/Parenting Abilities*

It is undisputed that S.A. was born addicted to amphetamines. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *id.* § 263.307(b)(8) (history of substance abuse by child's family or others who have access to child's home); *Holley*, 544 S.W.2d at 371–72. Ms. Jones testified that after birth, S.A. went through drug withdrawal. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *id.* § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. J.G. testified that when the child was placed in her home at two months of age, she was still experiencing withdrawal symptoms. *See* TEX. FAM.

CODE ANN. § 263.307(b)(1); *id.* § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. J.G. stated S.A. would wake up in the middle of the night screaming and shaking. Then, at random times, she would go into a deep sleep or stare. S.A. also experiences numbness on her left side, which requires occupational therapy. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

With regard to the emotional and physical danger to the child — now and in the future, there is evidence Mother engages in drug use and has been a victim of domestic violence in her relationship with Father. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family or other who have access to child's home); *id.* § 263.307(b)(8); *id.* § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Mother admitted she was using illegal substances when S.A. was born. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. She stated she was using methamphetamines and Tylenol with codeine. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother told the trial court that she had been using illegal substances since she was eighteen years old, stopping only for a brief period when she gave birth to another child; Mother is now thirty years old. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother also admitted she last used methamphetamines just two weeks before the final hearing. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. She is aware that S.A. tested positive at birth for amphetamines. Despite her drug use, Mother failed to engage in the court-ordered services relating to drug treatment. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate appropriate agency's close supervision); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect

positive environmental and personal changes within reasonable time period); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. In fact, the evidence shows the Department made at least three referrals for treatment, including one the day before the final hearing, yet Mother failed to engage. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

The evidence also showed the existence of domestic violence between Mother and Father. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. During her testimony, Mother admitted the existence of physical abuse in the relationship. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. She stated that because of the abuse she has been "a mess." Because of the domestic violence, Mother was ordered, pursuant to her service plan, to complete domestic violence classes. However, despite Mother's admission that the domestic violence has had a significant impact on her life, she failed to engage in the court-ordered services related to domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Evidence of domestic violence in the home supports a trial court's best-interest finding under the third *Holley* factor — emotional and physical danger to the child now and in the future, as well as subsection E of section 263.307(b)(12). *See Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12)(E) (courts may consider whether parent has adequate skills to protect child from repeated exposure to violence although violence may not be directed at the child); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (stating domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest). Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.—San Antonio 2013, no pet.).

In addition to a history of drug use and domestic violence, the evidence also showed that Mother has had previous involvement with the Department, which ultimately resulted in termination of her parental rights to four other children. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Jones testified Mother knew, based on her prior interactions with the Department, that completion of court-ordered services is mandated in order to avoid termination. And yet, Mother failed to complete almost all of the service plan requirements, including drug treatment and domestic violence classes, which the Department considered the most important aspects of her plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Moreover, despite the prior terminations, which the record suggests were based at least in part on Mother's substance abuse, Mother continued to use drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. A trier of fact may consider a parent's history with her other children in considering the danger or potential danger to another child. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013); *In re E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In *E.C.R.*, the supreme court, when conducting a best interest analysis, considered that prior to the current termination proceeding, a mother's rights to her four older children had been terminated. *E.C.R.*, 402 S.W.3d at 248. In its analysis, the supreme court specifically pointed out that the mother's rights to her oldest child had been previously terminated. *Id.* Accordingly, in this case, the prior termination of Mother's parental rights to her other children was evidence the trial court could consider in determining whether termination was in S.A.'s best interest. *See id.*

The foregoing evidence is also relevant to Mother's parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. As set out above, Mother has a long history of drug use, has been involved in

domestic violence, and had her rights to four other children terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Despite these serious issues, the evidence shows Mother failed to comply with the portions of her service plan that were prescribed to deal with drug use and domestic violence, knowing from her prior experience with the Department that completion of services was necessary to avoid termination. The only portion of the plan completed by Mother was her parenting class. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although Mother claimed she had "done a 12-step program, meetings," she did not provide proof of this to the Department as required. On this basis, the trial court could have determined Mother lacks the abilities needed to parent her infant daughter. *See Holley*, 544 S.W.2d at 371–72.

### 3. *Available Programs to Assist Individual to Promote Best Interest*

As previously discussed, the Department created a service plan for Mother, which she signed in March 2017. The service plan required that she complete services relating to parenting, family violence, individual therapy, and drug abuse. She was also required to submit to random drug testing. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Jones testified the most important items on Mother's plan were completion of a substance abuse treatment program and domestic violence classes. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. According to Ms. Jones, Mother completed only a parenting class, although Mother claimed to have participated in a twelve-step program. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Mother either failed to submit to drug tests or failed drug tests, and as a result, she was denied visitation from November 2016 up to the final hearing. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Thus, the evidence

shows that despite the availability of services and programs provided by the Department, Mother chose not to engage, particularly with regard to the most important issues — drug use and domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

    4. *Plans for Children by Those Seeking Custody/Stability of Home or Proposed Placement*

Although Mother testified she deserves a second chance with S.A., the record is devoid of any evidence regarding her plans for the care of her daughter should she retain custody. *See Holley*, 544 S.W.2d at 371–72. At the time of the hearing, Mother's housing and employment status were unknown. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Moreover, she admitted using illegal drugs two weeks before the final hearing. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

As described above, S.A. is currently residing with her paternal aunt and uncle and their children. She has been with them for more than eight months, and Ms. Jones testified she is bonded with the family and they are meeting her needs. *See Holley*, 544 S.W.2d at 371–72. J.G., the paternal aunt, testified her family desires to adopt S.A. *See id.* When asked whether she had spoken to Father or Mother, J.G. stated she had not had any communication with Mother, but Father told her he "would rather just step out and let me take over the baby, because he knows he can't do it."

    5. *Acts or Omissions Suggesting Parent-Child Relationship is Not Proper/Excuses*

With regard to the final *Holley* factors, the trial court heard evidence of the following acts and omissions by Mother, establishing the existing parent-child relationship is improper: (1) Mother's long-term, untreated drug use; (2) Mother's failure to deal with domestic violence issues; (3) evidence of the prior termination of Mother's parental rights to four other children; and (4)

Mother's failure to engage in court-ordered services. *See id.* With regard to excuses for her acts and omissions, Mother testified that she has been through a lot — substance abuse and physical abuse, causing her to lose trust and "burn bridges." *See id.* She stated she is "trying to get right, not using, so — it's not easy." She stated she believed she deserved another chance as S.A.'s mother. When asked why she did not engage in services, she claimed she lacked support — that she had "been a mess." *See id.* However, she stated, in the last two weeks she has "been doing okay . . . trying to get it right."

### *Summation*

After reviewing the evidence above and considering the *Holley* factors and the statutory factors in section 263.307(b) of the Code, we conclude the evidence was such that the trial court could have reasonably determined termination of Mother's parental rights was in S.A.'s best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. The evidence shows Mother has issues relating to domestic violence and drug use, which she failed to address. Mother's failure to address these issues subjects S.A. to a life of emotional and physical instability. The evidence also shows that in the months leading up to the final hearing, Mother managed to complete only one requirement of her service plan — a parenting class. This was despite Mother's prior involvement with the Department, from which she knew that a failure to complete services could and did result in termination of her parental rights. Moreover, Mother has not challenged the trial court's findings that she (1) engaged in conduct or knowingly placed S.A. with persons who engaged in conduct that endangered S.A.'s physical or emotional well-being; (2) constructively abandoned S.A.; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of S.A.; and (4) used a controlled substance in a manner that endangered the health or safety of S.A. and failed to complete a court-ordered substance abuse program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O), (P).

The grounds for termination are probative on the issue of best interest. *See C.H.*, 89 S.W.3d at 28; *B.R.*, 456 S.W.3d at 615; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Accordingly, after considering all the evidence in the light most favorable to the best interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in her daughter's best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

Based on the foregoing, we hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find that termination of Mother's parental rights was in the best interest of S.A. Accordingly, we overrule Mother's sufficiency complaint and affirm the trial court's order of termination.

Marialyn Barnard, Justice