

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00847-CV

**IN THE INTEREST OF S.E.S.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA02682
Honorable Richard Garcia, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:   Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 30, 2018

AFFIRMED

This is an appeal from a trial court's order terminating appellant mother's ("Mother") parental rights to her child, S.E.S.[1]  On appeal, Mother does not challenge the grounds for termination; rather, Mother merely contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the child's best interest.  We affirm the order of termination.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") received a referral regarding S.E.S. just after her birth on November 26, 2016.  The referral reported that

---

[1] The trial court also terminated the parental rights of S.E.S.'s father ("Father"), but he did not file a notice of appeal challenging the trial court's order.  Accordingly, he is not a party to this appeal.

Mother had engaged in neglectful supervision and physical abuse based on the fact that S.E.S. tested positive at birth for amphetamines, Benzodiazepines, and marijuana. Mother also tested positive for amphetamines and marijuana at the time of S.E.S.'s birth. Mother claimed Father forced her to take "Ice" and Xanax to force her into labor at home; he did not want Mother to leave the house. However, it is undisputed Mother gave birth in the hospital.

Six days after S.E.S.'s birth, the Department removed the infant from the hospital and placed her with her foster parents. S.E.S. has been with those same foster parents since the initial placement. Subsequently, the Department filed a petition to terminate Mother's parental rights to S.E.S. Almost a year to the day after the child's birth, the matter moved to a final hearing.

At the hearing, the trial court heard testimony from (1) Monica Camacho, the Department caseworker who worked with Mother throughout the course of the case; and (2) Mother. Ms. Camacho testified about the child's birth and the withdrawal symptoms she suffered thereafter. She advised the trial court that Mother was arrested a week after she gave birth to S.E.S. for an aggravated robbery committed by Mother just five days after the birth. Mother was later convicted of the aggravated robbery and sentenced to six-years' confinement in the Texas Department of Criminal Justice — Institutional Division ("TDCJ"). Earlier that same year, Mother had been arrested for "assault bodily injury-married/cohab." That offense involved a domestic violence incident with a man with whom Mother had an intimate relationship.

As for her service plan, which took into account Mother's prior history with the Department and her criminal history, Mother completed all the services available to her in the Bexar County Jail prior to her transfer to TDCJ. She was unable to complete certain services — drug tests, psychiatric evaluation, drug assessment, visitation — due to her incarceration and the unavailability of the services in the jail. However, Ms. Camacho testified that even though Mother

completed numerous services, she failed to successfully address the reasons for the initial removal, continuing to blame Father for her situation.

The Department also presented evidence of prior parental terminations. Without objection, the trial court admitted into evidence a 2013 order of termination. In that order, Mother's parental rights to three other children — ages thirteen, twelve, and six at the time — were terminated.

At the conclusion of the hearing, the trial court terminated Mother's parental rights, finding she: (1) knowingly placed or knowingly allowed S.E.S. to remain in conditions or surroundings that endangered her physical or emotional well-being; (2) engaged in conduct or knowingly placed S.E.S. with people who engaged in conduct that endangered her physical or emotional well-being; (3) had her parental rights terminated with respect to another child based on a finding that her conduct violated sections 161.001(b)(1)(D) or (E) of the Code; (4) constructively abandoned S.E.S.; (5) knowing engaged in criminal conduct that resulted in her conviction of an offense and confinement or imprisonment and inability to care for S.E.S. for not less than two years from the date the petition was filed; and (6) was the cause of S.E.S. being born addicted to a controlled substance, other than one legally obtained by prescription. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), (M), (N), (Q), (R) (West Supp. 2017). The trial court further found termination of Mother's parental rights would be in S.E.S.'s best interest. *See id*. § 161.001(b)(2). Based on its findings, the trial court rendered an order terminating Mother's parental rights. Thereafter, Mother timely perfected this appeal.

## ANALYSIS

As noted above, in this appeal Mother does not challenge the evidence regarding the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1) (D), (E), (M), (N), (Q), (R). Mother argues only that the evidence is legally and

factually insufficient to support the trial court's finding that termination was in her daughter's best interest. *See id.* § 161.001(b)(2).

*Standard of Review*

A trial court may terminate a parent's right to a child only if it finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of the child. *Id.* § 161.001(b). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015). When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

*Best Interests — Applicable Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing the evidence within the *Holley*

framework, we note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2012). In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

In addition to the *Holley* factors, we recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

*Application*

As indicated above, two witnesses testified at the final hearing — Ms. Camacho, the Department caseworker, and Mother. Ms. Camacho testified S.E.S. had just turned a year old at

the time of the final hearing. Thus, S.E.S. was too young to express an opinion on her desires with regard to conservatorship. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. However, when a child is unable to express her desires, the fact finder may consider that she has bonded with her foster family, is well cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Here, the evidence showed that although the Department scheduled a visitation for Mother prior to her arrest, she did not exercise it. Thereafter, she was incarcerated based on her arrest for aggravated robbery and visitations were impossible. Ms. Camacho testified she visited Mother each month she was incarcerated in the Bexar County Jail, providing her with pictures and videos of S.E.S. Ms. Camacho stated Mother always asked about S.E.S. and appeared to be concerned about her, but because there was no visitation between Mother and child, there is no attachment or bonding.

On the other hand, S.E.S. is thriving in her foster home. The evidence shows S.E.S. is bonded with her foster family, which includes her foster parents, foster brother, and foster grandparents. *J.D.*, 436 S.W.3d at 118. This is the only family S.E.S. has known since she was a week old. Her foster family is able to meet all of S.E.S.'s needs, including the special needs that resulted from her exposure to drugs while in the womb. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. As a result of her drug exposure, S.E.S. receives occupational therapy four times a month, physical therapy two times a month, and specialized skills training three times a month. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. Because of the care of her foster parents, S.E.S. is now "performing at her age level."

With regard to the emotional and physical danger to the child — now and in the future — there is evidence that Mother engaged in domestic violence, assaulting a man with whom she was intimate. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family); *Holley*, 544 S.W.2d at 371–72. This resulted in a criminal charge of "assault bodily injury-married/cohab" in 2016. At trial, evidence of other criminal activity was presented. At the time of the final hearing, Mother was in TDCJ, having been sentenced to six years' confinement for an aggravated robbery committed just days after she gave birth to S.E.S. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72; *In re M.L.C.*, No. 04-17-00459-CV, 2017 WL 6597828, at *5 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied (mem. op.) (holding parent's criminal activities and history are relevant to best interest analysis). Mother testified she will not be eligible for parole for at least two years. Moreover, Mother has three prior arrests for marijuana possession in 1997, 2014, and 2015, and an arrest for vehicle theft in 2002. Combined with the more recent arrests for assault and aggravated robbery, Mother has quite an extensive criminal history. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8) (history of substance abuse by child's family); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable period of time); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *M.L.C.*, 2017 WL 649282, at *5. A parent's criminal conduct, prior convictions, and incarceration affects the parent's life and her ability to parent, subjecting her child to potential emotional or physical danger, now and in the future. *M.L.C.*, 2017 WL 649282, at *5.

Moreover, it is undisputed that both Mother and S.E.S. tested positive for drugs at the time of S.E.S.'s birth. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *In re L.R.G.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that parent's

drug use supports finding that termination is in child's best interest). As set out above, S.E.S. tested positive at birth for amphetamines, Benzodiazepines, and marijuana; Mother tested positive for amphetamines and marijuana. Mother sought to excuse the drug issues by claiming Father forced her to take "Ice" and Xanax so Mother would give birth at home. However, it is undisputed Mother gave birth in the hospital. Moreover, it does not explain the positive test for marijuana.

As stated above, the evidence also showed that Mother has had previous involvement with the Department, which ultimately resulted in termination of her parental rights to three other children. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The Department introduced, and the trial court admitted into evidence, a certified copy of a 2013 order of termination. That order establishes Mother's parental rights to three other children were terminated because Mother: (1) knowingly placed or allowed her children to be placed in conditions that endangered their physical or emotional well-being; and (2) failed to comply with the provisions of a court-ordered service plan that set out the action necessary to obtain the return of her children. The endangerment ground stemmed from domestic violence, apparently a continuing issue in Mother's life. Courts have recognized that prior terminations are relevant in determining whether a parent's rights to the child at issue should be terminated. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013); *M.L.C.*, 2017 WL 649282, at *5. *In re E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Accordingly, in this case, the prior termination of Mother's parental rights to her other children was evidence the trial court could consider in determining whether termination was in S.E.S.'s best interest. *See E.C.R.*, 402 S.W.3d at 248; *E.A.F.*, 424 S.W.3d at 751; *M.L.C.*, 2017 WL 649282, at *5.

The foregoing evidence is also relevant to Mother's parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at

371–72. Mother has a history of drug use and criminality, having been arrested for drug possession, vehicle theft, assault, and aggravated robbery. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. And as discussed above, she also had her rights to three other children terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Although Mother completed as many services on her plan as available given her incarceration, and expressed her desire and willingness to complete any other services mandated, Ms. Camacho opined that termination was in the best interest of the child given Mother's decision to engage in criminal behavior just days after her daughter's birth, her current incarceration, and the lack of a bond between Mother and child. Given the evidence, the trial court could have determined Mother lacks the abilities needed to parent her infant daughter. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

## CONCLUSION

After considering all the evidence in the light most favorable to the trial court's best interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in her child's best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Thus, we hold the evidence is sufficient to support the trial court's finding that termination of Mother's parental rights was in S.E.S.'s best interest and affirm the trial court's termination order.

Marialyn Barnard, Justice